# CHARLESTON.

DAVIS, *et al.,* *v.* BOARD OF EDUCATION, *et al.* (two cases).

Submitted June 23, 1893.—Decided December 6, 1893.

1. SCHOOLS AND SCHOOLHOUSES—BOARDS OF EDUCATION—CONTRACTS—CONSTRUCTION OF STATUTES.

     Under section 45, c. 45, of the Code, the value of a schoolhouse and site yet unsold, though the board of education intends to sell it, can not be taken into consideration in estimating the amount of money available in the fiscal year for contracts and expenditures.

2. SCHOOLS AND SCHOOLHOUSES—BOARDS OF EDUCATION—CONTRACTS—CONSTRUCTION OF STATUTES.

     Where a contract between a board of education and contractors for building a schoolhouse fixes a sum as the contract price, which may exceed the amount of money available under section 45, c. 45, of the Code for a fiscal school year, but contains a provision

that no liability shall be imposed by such contract on the board for anything beyond the sum lawfully available under that section, so as to prevent the contractors from recovering of the board anything beyond such sum, the contract is not unlawful under said section, so as to prevent the board from paying upon it such money as is applicable under said section.

JOHN W. HARRIS for appellants cited : Code, c. 45, s. 45 ; Read. *v.* Atlantic City, 49 N. J. L.; 31 Md. 375 ; Code, c. 45, s. 34, 38; 35 W. Va. 605 ; 42 N. W. Rep. 774; Id. 767; 52 Fed. Rep. 382.

GILMER & GILMER for appellees cited : Code, c. 45, s. 45 ; 35 W. Va. 605 ; 1 Dill. Mun. Corp. § 130 *et seq.;* 2 High Inj. § 1239 ; Code, c. 45, s. 35.

BRANNON, JUDGE :

The board of education of Ft. Spring district, Greenbrier county, made a contract on May 14, 1892, with Driscoll & Peters to erect a schoolhouse in the town of Ronceverte, and Davis and others filed a bill to obtain an injunction restraining the board from levying to pay Driscoll & Peters anything under said contract; and such injunction was awarded, and a motion to dissolve was overruled, and the injunction perpetuated. After said injunction was awarded, and while pending, the board and Driscoll & Peters made a new contract on July 16, 1892, cancelling the former one, and providing for the building of said schoolhouse, and the board made a levy for the building-fund; and then Davis and others filed another bill, and obtained on it an injunction restraining the board from issuing, and the sheriff from paying, any drafts issued to Driscoll & Peters for work done under said new contract. The defendants moved the court to dissolve the injuction, but the judge refused to do so. The board of education and Driscoll & Peters obtained an appeal to review proceedings in both cases.

As to the first case I may safely say that the show of funds available to pay the contract price for the schoolhouse under the agreement between the board of education and the building contractors of May 16, 1892, is inadaquate, and that the contract created a debt reaching beyond the

current year, and binding the district in future, unless we can include in the count or estimate of available funds the old school building. I do not think we can do this. True, section 39, c. 45, of the Code does say that the proceeds of taxes levied under section 38 for the use of the building-fund, and "of school houses and sites sold," and donations, devises, and bequests, shall constitute a special fund, called the "Building Fund," to be used in building and furnishing schoolhouses; but that section only tells us how that fund shall be constituted, and has no relation to this question, save that it makes money in the treasury from actual sales of schoolhouses and sites a part of the fund, which may be used for building, but it uses the words proceeds of "school houses and sites sold," not that may be sold. How can we include a mere estimate of the value of a disused schoolhouse in the estimate or funds actually available when it may not be sold, and if sold, the proceeds of the sale may be very much less than the estimate.

When we look at section 45, c. 45, Code, it makes unlawful any contract in any year for the expenditure of more than the aggregate amount of the district's quota of the general school-fund, and the tax levies that year, and any balance in the sheriff's hands from the preceding year, and such arrearages of taxes as may be due the district; and here we do not find any allowance for unsold schoolhouses or sites, though the items that are to be treated as ready or available means are carefully enumerated.

But the answer of Driscoll & Peters states that there was no intent by the first contract to blind the board to do anything contrary to chapter 45 of the Code, and if it bound the board to any extent beyond what it could lawfully do under said chapter, or any statute relative to boards of education, they did, by their answer, release, acquit, and discharge the board and its members from any and all liability created or attempted by said contract contrary to law, and agreed to hold the board liable under it only to the extent that it might lawfully bind itself under the laws aforesaid, and that they construed and held the contract to bind the board to pay for such work as they (the contractors) might do to the extent of available funds during the year ending

June 30, 1892, and for any work afterwards done they construed the contract so that they would have to take chances of a levy therefor.

Chapter 45, s. 45, of the Code, provides that no board of education shall incur any debt to be paid out of the school money of any subsequent year, and shall not contract for or expend in any year more than the aggregate amount of the quota of the general school fund, and the amount collected from the district levies of that year, together with the balance in the sheriff's hands from the preceding year, and such arrearages of taxes as may be due the district. The injunctions rest on the claim that the contracts both violated this statute. The plain and commendable purpose of the provision is to make the available funds of each year pay the demands of that year, and to protect the taxpayers from indebtedness beyond what each year's means will pay. That means an enforceable debt. Let us say that this contract did create such debt, and that the injunction, in its inception, was maintainable. Yet when these contractors, by their solemn agreement of record, through the answer filed in the case signed by them operating as an agreement of record and operating also as an agreement based on sufficient consideration—that is, a release from litigation, and permission to go on with the work—when, I say, they thus acquit the board from all demand further than the lawfully applicable means, and repudiate all pretension to hold the board liable further, and thus bring the contract within the pale of the lawful authority of the board, and purge it of objections, it would seem that the whole object of the law is carried out. They have estopped themselves from doing what the law forbids. The board does no unlawful act further than that it makes a debt reaching over and mortgaging next year's fund by a present binding contract, and when that feature is removed there is no taint.

The board is commanded to provide schoolhouses. Often the public need requires a house costing more than the means of one year can pay. Can the board not begin it, and lay the foundation one year, and put the building on it the next year, and finish it the next, so it do not make a

contract that will involve at once future years? I hardly think the statute means to tie the power of the board so closely as that. Such action would not involve the public, for next year the work may be abandoned or postponed. The providing schoolhouses is a part of the work of the current year. The board is an agency in the government vested with important powers, and must be accorded credit for subserving public interest by prudent action, but it is limited by the injunction not to create a debt beyond the year's means to pay. The law has no further restricted it. This contract having been brought within the law, I see no reason to further restrain the lawful functions of the board.

After the court had overruled a motion to dissolve, and perpetuated the injunction, the defence, on the same day, filed the new contract of July 16, 1892, and again moved a dissolution, which the court refused. The contract was not introduced by amended answer, as perhaps it should have been. No objection was made. As the answer itself called for a dissolution, it is unnecessary to discuss the manner of filing the paper; but I think, barring that, the paper also called for a dissolution for reasons stated below, as it more properly concerns the second suit.

As to the second suit: After the court had awarded the injunction in the first suit, the board of education and Driscoll & Peters made a new agreement for the construction of the schoolhouse, dated July 16, 1892, with the intent as it states, to proceed with the work, and avoid all litigation, and render the contract consistent with law, by which contract the former contract was wholly canceled, and provision made for the construction of the house at the price of nine thousand five hundred and forty dollars payable in installments of six hundred dollars when the foundation should be completed; two thousand dollars more when the brickwork should be completed; two thousand seven hundred and twenty dollars on December 1, 1892; and the remaining two thousand seven hundred and twenty dollars on January 1, 1893. And a clause provided that nothing in the contract should be construed to require the builders to proceed with the work during that or any subsequent

fiscal school year, to any greater extent than the extent to which the expenditure for the building might be made under section 45 of chapter 45 of the Code of the state, but that they should push the work as rapidly as funds for their payment should become available under said Code section, or any school levies lawfully made, provided that unless there should be in the hands, or under the control of the board, on or before September 1, 1892, funds sufficient for payment of the contract price, the contractors should have option to annul the contract, and receive pay on the basis of said contract so far as the work had been done; and another clause provided that nothing in the agreement should be construed to create any indebtedness on the part of the board beyond the means then at its disposal or under its control, according to the provisions of said Code section, and, if work done should amount to more than the means so at the disposal of the board, the contract should not be construed as imposing any liability on the board for any year subsequent to the fiscal year expiring June 30, 1893.

The board of education laid the levy for the current year. Then Davis and others filed another bill to enjoin the issuing or paying to Driscoll & Peters of any drafts out of the building fund levy so made, and an injunction was awarded. The board and Driscoll & Peters filed answers setting up the new contract; maintaining that there were funds adequate in the current year to discharge the price fixed by the contract for the construction of the school building, and that the contract did not operate to create any debt beyond the money expendable in that year, and did not bind the money belonging to any future year, or in any event require the board to pay a cent beyond the money lawfully applicable—money belonging to the then current year—whether work was done beyond it or not.

The only theory on which we can hold this second contract as contravening the statute is that it creates a debt which may not be within the reach of moneys on hand in the fiscal year to discharge, and that it carries over and binds moneys belonging to a year or years in future. But can we say it does this? If it does not to this, it is not un-

lawful. There is the plain letter of the contract that the board shall not pay, and rest under no obligation to pay, beyond the money available that year, and the plain letter that the contractors need not go on beyond that money with their work, and, if they did, it imposed no obligation on the public to pay for it. If there should be a deficit, the board had next year a right to refuse pay. The contract was improvident, perhaps, on the part of the contractors, but they made it. Here are parties competent contracting on a lawful subject, on valuable consideration; and why could they not insert this clause limiting the liability?

If a board of education contract for a schoolhouse at a given sum, it would have to pay it, if the money of the year be sufficient or insufficient, unless that Code section would forbid payment. Now, could it not, by agreement limit its liability to the money of the particular year, if the other party, in order to get the work, chose to run the risk? Why not? It is said the case of *Mayor etc.* v. *Gill*, 31 Md. 375, rules this case the other way. But I see a clear and strong line of difference between that and this case. The Maryland constitution provides that no debt, with certain exceptions, shall be created by the city of Baltimore, nor shall its credit be given or loaned in aid of any corporation, nor shall its council involve the city in works of internal improvement, nor in granting aid thereto, which would involve the faith and credit of the city unless authorized by the legislature, *etc.* The council passed an ordinance to raise one million dollars by the hypothecation of shares of stock in the Baltimore & Ohio Railroad Company owned by the city, and for investing the money in bonds of the Western Maryland Railroad Company. Now, observe that money was to be borrowed by the city to be devoted, in the teeth of the constitution, to aid a corporation in a work of internal improvement—an act wholly forbidden without legislative assent—while here the board of education is doing an act it is commanded by law to do, unless done in improper manner.

But the purpose for which the Maryland case is cited is that it will show that the clause in the contract here in-

volved, limiting the liability to the funds of the one year, does not prevent the whole contract sum for building from being a debt against the board of education. Let us see. The ordinance of the council of Baltimore provided that the city should not be bound, but the lenders of the money must look to the stock hypothecated. The court properly said—First, that there was a debt; and, second, one for which the property of the city was pledged. The constitution forbade aid by the city to a corporation, or to works of internal improvement, and the property of the city was pledged and endangered, its faith and credit extended, against the constitution, so far as the property was concerned. It was a debt, because enforceable out of its property, and, besides, a debt made for an unlawful purpose. Baltimore could neither create such a debt, nor pledge its securities for it; but the board of education made a lawful debt, and pledged only one year's money which it could lawfully do. Both that case and this hinge on the act done. Remember that Code, s. 45, does not forbid a debt, but one to be paid out of the school money of a subsequent year. The naming a sum in a contract for building a schoolhouse payable in future, may be, in a sense, called a "debt;" but if not payable out of the school money of subsequent years, in terms, or if it will not exceed the money of the then fiscal year, it is not a debt forbidden by the section.

In both the Maryland case and this case, let us say a debt was created; but in the Maryland case any debt was forbidden, while here such a debt as was made was not forbidden. In the Maryland case the property of the city was pledged contrary to the law, while here no more was pledged than the law authorized. If the law had not made it unlawful for Baltimore to make the debt and pledge the property it did pledge, the ordinance would have been good. This is not an unfair presentation, as here the board made a lawful promise to pay, and pledged lawfully one year's assets and no more. I do not see how a debt without obligation can be a debt in a legal sense. If it be said that the clause in the Baltimore ordinance limiting the city's liability to the securities pledged did not prevent the

engagement from assuming the nature of a debt, and so the limitation in this contract of the liability to one year's money does not prevent the board's engagement from being a debt, I answer that it does not, but it prevents the engagement from being a forbidden debt, whereas the limitation in the Baltimore ordinance did not prevent that debt's being one forbidden. Here the law authorizes a contract for a schoolhouse, and the pledge of one year's money for it. If we could say that when a board of education contracts for a school for a certain sum, which may or may not be in excess of the money applicable to it, and takes care to provide against any liability beyond what such money will pay, this is a debt which, in the language of section 45, "is to be paid out of the school money of any subsequent year," we should uphold this injunction; but we can not say so. Can we say that the clause limiting the liability to one year's assets is not a bar against the contractor's recovering it? I think we can not. Then there is no prohibited debt. I do not think this decision at all in conflict with *Spillman* v. *City of Parkersburg*, (W. Va.) 14 S. E. Rep. 279.

We are of opinion to reverse all orders and decrees in both cases overruling motions to dissolve the injunction of perpetuating the first one and to dissolve both injunctions and dismiss both bills.