# CHARLESTON.

SHINN *et al. v.* BOARD OF EDUCATION *et al.*

Submitted June 20, 1894.—Decided November 24, 1894.

1. JURISDICTION.

A court of equity has jurisdiction of a suit by and on behalf of the resident taxpayers of a school district brought to set aside and hold for naught a contract made by the Board of Education, so far as the same creates and incurs a debt to be paid out of the school-money of subsequent years.

2. BOARD OF EDUCATION.

The following order is upon its face an order for the payment of money out of the building fund levied for a year subsequent to the year, in which the debt was incurred, and is not negotiable according to the law of this state. Order No. 44 reads as follows—

lows: "Ripley District, W. Va., Sept. 25, 1891. Sheriff of Jackson County: Pay to the order of Educational Aid Association or bearer four hundred and twenty dollars and charge to the building fund of Ripley District. By order of the Board of Education. Due Dec. 1st, 1892. (Without interest.) J. F. Coast, President. I. S. Little, Secretary. $420.00.

3. PARTIES.

Where a person files his petition asking to be admitted as a party defendant in a pending suit in equity, in which no allegation is made naming or referring to him in any way, and no relief is prayed against him, and he is admitted to become such party defendant, he does not become a party in the cause, until he has been made a party by some allegation in the bill as amended.

4. BOARD OF EDUCATION.

The Board of Education of a school-district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by the statute.

5. EQUITY.

A case in which certain points of equity practice are discussed and considered.

LEONARD & ARCHER and W. MILLER for Appellant:

I.—*School Law.*—Secs. 2, 6, 7, 8, 9, 14, 20, 23, 34, 38, 39, 45, 59, 66, c. 45, Code.

II.—*Superceding Levy.*—Ch. 72, Acts 1875, App. 1062, Code.

III.—*Parol evidence not received to contradict record.*—20 Am. & Eng. Ency. Law, 511.

IV.—*No particular method of notice required.*—136 Ill. 478; 12 Minn. 17; 25 Conn. 556.

V.—*Entry and signature of minutes directory.*—74 Am. Dec. 305.

VI.—*Board may purchase apparatus.*—20 W. Va., 360, 366; 9 Am. & Eng Corp. Cases, 144; 30 Am. Rep. 447.

VII.—*School orders may be made payable at future dates.*—38 W. Va.

VIII.—*Taxes paid over not subject to injunction.*—59 N. Y. 21.

IX.—*Voluntary payment of taxes; can not be recovered by suit.*—18 Am. & Eng. Ency. Law, 220.

X.—*Amended and supplemental bills; rules as to filing.*—Code, s. 12, c. 125; 1 Bar. Ch'y. Prac. 105.

XI.—*Plaintiff must make out his case by all material allegations.*—37 W. Va. 571.

XII.—*Bill by taxpayers to restrain collection of taxes.*—16 W. Va. 527.

XIII.—*Powers of board of education.*—21 Am. & Eng. Ency. Law, 832-4 and notes.

W. A. PARSONS for appellees, cited Code, c. 45, s. 6, 23, 34, 38, 45; 15 Am. & Eng. Ency. Law 1234; Id. 1039; Id. 1290; 20 W. Va. 360; 5 Law. Rep. 546; 30 Am. Rep. 450; Id. 447; 25 Ia. 447; 119 Ind. 213; 20 Law Rep. 136; 123 Ind. 1; 18 S. E. Rep. 588; 28 N. H. 61; 21 Am. & Eng. Ency. Law 800 (n. 4); 30 W. Va. 424; 5 Minn. 280; 29 Ohio St. 419; 21 Am. & Eng. Ency. Law 793, 794.

HOLT, JUDGE:

This is an injunction by and on behalf of the citizens and taxpayers of Ripley School District to restrain and enjoin the payment of three certain drafts for four hundred and twenty dollars each on the ground of illegality. On the 15th day of November, 1893, defendant Thomas E. Davis moved to dissolve the injunction, which motion the court overruled, refusing to dissolve same, from which order this appeal was allowed. Code, c. 135, s. 1, cl. 7. Stating the contract and orders as if they were valid, the facts are as follows: On the 25th day of September, 1891, the Board of Education of Ripley District in Jackson County entered into a contract with one of the defendants, viz: the Educational Aid Association of Chicago, for the purchase of forty two sets of "Public School Study Made Practical," to be delivered on board the cars, and shipped to J. F. Coast, Jackson C. H., Jackson county, W. Va., on the 15th day of October, 1891, in consideration of which the board of education agreed and bound itself to pay to the Educational Aid Association one thousand two hundred and sixty dollars, being thirty dollars per set, to be paid in the following manner: Four hundred and twenty dollars due 1st December, 1892; four hundred and twenty dollars due December 1, 1893; and four hundred and twenty dollars due December 1, 1894;—

and the president and secretary of the board were authorized and directed to issue, sign and deliver to the Educational Aid Association or its agents orders in due form on the sheriff of Jackson county payable out of the building fund of the said district for the said one thousand two hundred and sixty dollars payable as aforesaid, and this contract was entered on the record of the board. The president and secretary on the same day issued, signed and delivered to the agent of the Educational Aid Association orders No. 44, No. 45, and No. 46, which are as follows:

"No. 44. Ripley District, W. Va., Sept. 25, 1891. Sheriff of Jackson County: Pay to the order of Educational Aid Association, or bearer, four hundred & twenty dollars and charge to the building fund of Ripley district. By order of the board of education. Due Dec. 1st, 1892. (Without interest.) J. F. Coast, President  I. S. Little, Secretary.  $420.00."

"No. 45. Ripley District, W. Va., Sept. 25, 1891. Sheriff of Jackson County: Pay to the order of Educational Aid Association, or bearer, four hundred & twenty dollars, and charge to the building fund of Ripley district. By order of the board of education. Due Dec. 1st, 1893. (Without interest.) J. F. Coast, President. I. S. Little, Secretary. $420.00."

"No. 46. Ripley District, W. Va., Sept. 25, 1891. Sheriff of Jackson County: Pay to the order of Educational Aid Association, or bearer, four hundred & twenty dollars, and charge to the building fund of Ripley district. By order of the board of education. Due Dec. 1st, 1894. (Without interest.) J. F. Coast, President. I. S. Little, Secretary. $420.00."

They are not negotiable even apart from the fact that they lack the statutory requirement of being payable at a bank, *etc.* (section 7, c. 99, Code); for the intention in such case as a general rule is to authorize the payment, and furnish vouchers to the proper disbursing officers, and not to put negotiable instruments in circulation; and they do not cut out equities as against the corporation, or in this case as against the resident taxpayers; and further on the ground that there is no implied authority in such officers to

execute negotiable instruments. See 1 Daniel, Neg. Inst. (4th Ed.) § 427 ; *Steinbeck* v. *Treasurer*, 22 Ohio St. 144 ; *School Directors* v. *Fogleman*, 76 Ill. 189 ; *State* v. *Huff*, 63 Mo. 288 ; 2 Beach. Pub. Corp. § 799 ; *Fox* v. *Shipman*, 19 Mich. 218.

On the 14th day of November, 1891, F. M. Durbin of the city of Parkersburg for a valuable consideration sold and delivered the three orders to the appellant, Thomas E. Davis. They bear no indorsement. On the 18th day of January, 1893, the plaintiffs filed their bill and obtained from the judge in vacation on the 19th day of January, an order of injunction, as prayed for, restraining the late sheriff, James M. Poling, and the present sheriff, I. M. Adams, from paying said sum of one thousand two hundred and sixty dollars, or said orders or any part thereof.

The material grounds, upon which the plaintiffs base their right to the injunction in their original and amended bills, are as follows :    (1) The order making and setting forth the contract of purchase was illegal, because Commissioner D. L. Sayreal, though present did not concur, and he was necessary to constitute a quorum.    The proceedings do not show upon their face who called the meeting and directed notice to be given.    That none in fact was given.    That, therefore, the meeting was illegal, and its proceedings void.    (2) The board had no authority under the law to use the building fund in the purchase of such things as those designated as "Public School Study Made Practical."    (3) It was a debt directed to be paid out of the school-money of subsequent years, and was therefore unlawfully incurred, in violation of the school-law (section 45, c. 45, Code).

The defendant, Thomas E. Davis, was made a party defendant on his own petition and answered, that he purchased the orders in controversy for a valuable consideration ;—that a levy was made for the payment of the order No. 44, due December 1, 1892 ;—that plaintiffs before that time had notice of defendant's purchase ;—that the levy was legal ;—that each plaintiff had notice of the levy and had paid the assessment before the suit was brought, and they are therefore estopped as to the order No. 44, for

four hundred and twenty dollars—that having notice they made no attempt to supersede the levy;—and that their remedy at law by writ of *supersedeas* was ample. Defendant denies that the meeting was illegal or irregular, but charges that the orders were legally and regularly issued in due course of business, under sanction of law, at a special meeting of the board of commissioners, regularly and duly called, a majority being present, and all having had due notice of the time and place, when the contract was made, and the order setting forth the same was entered on the record of the board; that the articles so purchased were such as the board was authorized to purchase; that they were delivered, accepted, placed in the schools and have since been in use; that the orders were negotiable, and not in excess of the amount authorized by law; that the board had a right to create a debt payable in one, two and three years; and that there was at least one thousand two hundred and sixty dollars in the hands of the sheriff on the 25th day of September, 1891, belonging to the building fund, not otherwise appropriated. The plaintiffs replied generally, and the issues were made up.

Several questions of pleading and practice are raised in this record and discussed by defendants' counsel, which call for some consideration. On the 10th day of March, defendant, Thomas E. Davis, filed his petition alleging, that the agent of the defendant, the said Educational Aid Association, had placed the three orders in the bill and proceedings mentioned, amounting to one thousand two hundred and sixty dollars, the payment of which had been enjoined, in the hands of F. M. Durbin, to be sold; and that he had bought the same, and paid the cash therefor, and was now the owner; and that defendant, the Educational Aid Association, had no longer any interest whatever in these orders. Thereupon the court ordered that Davis be admitted a party defendant to the suit, with leave to plead, demur or answer. Davis appeared by attorney, waived process, and tendered in open court his written demurrer to the bill, which was ordered to be filed and set down for argument, and also filed his answer, and moved to dissolve the injunction. Plaintiffs excepted to this an-

swer, and defendant, J. F. Coast, president of the board of education, filed his answer. On the 13th day of March, 1893, defendants, I. S. Little, secretary of the board of education of Ripley district, and D. L. Sayre, a commissioner of the board, filed their answers; and, the matters arising on the demurrer of defendant Davis having been argued and submitted, the court overruled the demurrer. Thereupon, plaintiffs tendered in open court an amended and supplemental bill, and moved to file the same, to which defendant Davis objected, and indorsed his objection; and the court proceeded to consider the exceptions of plaintiffs to the answer of defendant Davis, overruling them, and also overruled the objection taken to the filing of plaintiffs' amended and supplemental bill, ordered the same to be filed, and defendant Davis took time to demur, plead or answer, and plaintiffs took time to consider the answer of defendant Davis to the original bill. On the ——— day of November, 1893, defendant Davis filed his answer to plaintiff's amended and supplemental bill, filing the orders in controversy as exhibits therewith, also a copy of the order of the board of education which directed them to be issued, signed and delivered. Thereupon plaintiffs, on the ——— day of November, 1893, filed their amended bill No. 2, and filed, as an exhibit therewith, one of the forty two sets of "Public School Study Made Practical," in the bill and proceedings mentioned. To this bill, also, defendant Davis, on the 13th day of November, 1893, indorsed his objections and exceptions, and also tendered his demurrer thereto in writing. On the 15th day of November, 1893, the cause came on to be heard, and the court overruled the objection to plaintiffs' amended and supplemental bill No. 2, and permitted the same to be filed; and defendant Davis demurred thereto, and, plaintiffs having joined therein, the same was set down for argument, and, being argued and submitted, the court overruled it, and the plaintiffs tendered the affidavit of James M. Poling, and exhibits filed therewith, and the joint affidavit of William A. Parsons, J. A. Wooddell and William G. Hickle, and papers exhibited therewith as parts thereof, all of which had been tendered in open court at a former

day of the term, to be read for plaintiffs at the hearing of defendant Davis's motion to dissolve the injunction, to the filing and reading of which defendant Davis had indorsed his exceptions; and the court overruled the exceptions, and permitted the affidavits to be filed. Thereupon the court proceeded to hear the motion of defendant Davis, made at a former day of the term, to dissolve the injunction theretofore awarded, and it after being argued was submitted. On consideration thereof, the court overruled the motion and refused to dissolve the injunction, but retained and continued the cause; and this under our present statute gave defendant Davis the right to apply for an appeal, which was asked for and obtained.

It is not necessary to consider defendant Davis's demurrer to the original bill; for, when the prayer of his petition to be made a party defendant was allowed, the amendment of plaintiff's bill by reason thereof became necessary, for up to that time it contained nothing to justify a decree against him, for it proceeded in its allegations on the supposition, that defendant, The Educational Aid Association, was still the owner and holder of the three school-drafts, and was seeking to collect them from the late and present sheriff of Jackson county, out of the building fund of Ripley District. Defendant Davis had made an amendment necessary to some extent before there could in strict propriety be entered any order on his behalf or in his favor; and for the same reason the amended and supplemental bill being sworn to and filed by leave of the court, did not operate as a dissolution of the injunction or require a new order.

In our practice we are not careful to observe some of the distinctions between bills in naming them—as, for example, between a bill of amendment and supplemental bill—but we take them to be what they are in fact, without regard to the name given them. See *Sturm* v. *Fleming*, 22 W. Va. 404; *Laidley* v. *Merrifield*, 7 Leigh 346. In this case a change of interest and ownership of the orders disclosed by defendant Davis's petition did not make a supplemental bill proper, for it appeared that such change of interest had taken place before the institution of the suit. If I

understand defendant's objection or exception to the filing of plaintiff's amended bill, it is that it could only be done in the clerk's office in vacation at rules, and there have process issue thereon, because defendant had appeared and answered; that it can only be done in that way, and without leave of the court, but subject to be dismissed if improperly filed. In this the defendant, if not misapprehended, is mistaken. Section 12, c. 125, provides that plaintiff may of right amend his bill after appearance, if substantial justice will be promoted thereby. But, if such amendment be made after appearance of defendant, the court may impose such terms upon the plaintiff, as to continuance of the cause and payment of the costs of such continuance, as it may deem just. This may, by permission, be made by changes, etc., in the original bill; but after appearance it should be made by distinct and separate formal amendment or amended bill.

A pleading can be filed in court, process thereon may be awarded in court, and made returnable to court (see section 2, c. 124) if it does not run longer than ninety days; or it may be, and generally is, sent to rules, with award of process. The amended bill, after defendant's appearance, answer, *etc.*, may be presented to the court, with leave asked to file the same, and it will be granted on proper cause shown, and due notice to the other party; or leave to file will be given without notice, subject to defendant's right to have the same dismissed after his objection, if it is shown to have been improperly filed. Another reason for presenting it in court is it is an amended bill of injunction, which, among other things, prays that the prayer of the original bill of injunction may be granted, *etc.* It is sworn to, and plaintiff did not wish to run any risk of its operating as a dissolution of the injunction, or as grounds for its dissolution, by filing it without leave at rules. See 1 Daniel, Ch'y Pr. (6th Am. Ed.) top page 424.

Defendant also objected because it was tendered after his motion to dissolve. In that there might have been some force if his motion to dissolve had not been made before he was properly a party defendant to the suit, as he only became so so as to have a standing in court as a defendant,

in a position to move to dissolve, after the filing of plaintiffs' amended bill making him a party defendant, and making some allegation in reference to him such as was here made. Plaintiffs further say that they have learned, since the filing of defendant Thomas E. Davis's answer in this cause, that he is the owner of the said three orders, of four hundred and twenty dollars each. They therefore charge that said Thomas E. Davis owned the said three orders at the time this suit was commenced, and has since owned and now owns the same, *etc.*, and pray that defendant may bring said three orders into court, *etc.* Therefore there was certainly nothing irregular or improper in the court's refusing to dismiss its bill, and in permitting it to be filed, the filing of which defendant had rendered necessary by the granting of the prayer of his petition to be made a party defendant.

It is a cardinal principle in equity that all persons materially interested, either legally or beneficially, in the subject-matter of the suit, must be made parties. *Rexroad v. McQuaine,* 24 W. Va. 32. And when, as in this case, the court orders him to be made a party defendant, until and unless the original bill is amended so as to contain some allegations against him, or in regard to him, the court could render no decree against him; and, if it did so, such decree would be a mere nullity. See *McCoy v. Allen,* 16 W. Va., 724. Here defendant Davis is not named in the original bill. There is no allegation anywhere in it, which bears upon him or in any manner refers to him; nor is any decree prayed for against him. It is a solecism to speak of his answering or demurring to a bill of injunction, in which he is not named, or moving to dissolve an injunction, in which he does not by any inference appear to have any interest or concern. See *Moseley v. Cocke,* 7 Leigh 226; *Ford v. Doyle,* 37 Cal. 346; *Newman v. Mollohan,* 10 W. Va. 503. And this depends upon the principle that all orders and decrees must be justified by the pleadings, and that a plaintiff can no more recover without sufficient averments in his bill than he can without proof of his averments properly made. *Pusey v. Gardner,* 21 W. Va. 469; *Bierne v. Ray,* 37 W. Va. 571 (16 S. E. Rep. 804.)

This brings us to the demurrers. As we have already

seen, this defendant not yet being a party to the bill had no standing in court. His demurrer to the original bill was futile and nugatory, and, if it were not, the filing of the amended bill had *ipso facto* the effect of disposing of it without the court formally passing upon it; but the demurrer to the amended bill presents the same questions, and they are discussed by defendants' counsel on the theory that the scheme of the bill is to prevent and enjoin the illegal levy and collection and paying out of taxes in satisfaction of an illegal contract of purchase. Such, in my view, is not the purpose at least not the direct object of the plaintiffs' bill. It is true that they complain, and say that they are citizens, residents and taxpayers of the school district of Ripley, in the county of Jackson; that they own a large amount of real estate and personal property situate and taxable in that district; and that each of them is a taxpayer therein. But this is only intended to give them a standing in court—a right to sue; for they go on to say that the contract of purchase and the three orders to meet this obligation are illegal, and that the board of education undertook and attempted by its illegal contract to create, and did thereby illegally and wrongfully create, a debt against the school-district of Ripley, in favor of the defendant, The Educational Aid Association, to the amount of one thousand two hundred and sixty dollars, payable in three installments, evidenced by three orders for four hundred and twenty dollars each, now the property of defendant Thomas E. Davis; that thereby, without their knowledge, their taxes for the school year of 1892 were illegally increased to pay the first installment; but that they have not all paid the levy so made for the year 1892; and the prayer is, not that the levy or collection of any tax be restrained and enjoined, but the paying of it over, on a contract alleged to have been made in violation of law; that the contract itself may be set aside, and held for naught, and the orders given as provisional payment may be brought into court and cancelled.

Bearing in mind the frame of the bill, and the end to which it is adapted, and the consequent relief specially prayed for, will save us the discussion of several matters

which, in my view, have no direct bearing on the question raised by the demurrer. The bill shows that, as tax-payers, plaintiffs are directly and pecuniarily interestered in setting aside an illegal obligation, made payable out of the building fund. It need not allege that plaintiffs have yet been assessed. In fact, they say they have not been assessed as to eight hundred and forty dollars. Of course, in that view, the sheriff could have no tax-tickets in his hands, *etc.* They do not allege that they, without the injunction, would suffer irreparable injury, for that, it is likely, would not be true in the sense required when necessary to be alleged. They say nothing about avoiding multiplicity of suits; nor are they trying to avoid them, any further than the fact of bringing this one has that effect. It asks for no taxes to be refunded that have been paid; no injunction against the collection of any that have been levied, nor against the levying of any for any future year for any purpose, even for the purpose of paying this obligation in dispute. The demurrer to the original and amended bill was properly overruled; for, in my opinion, taken as a whole, they make a case for relief if made out by the proof.

It is also assigned as ground of error that the court, on the hearing of the motion to dissolve, permitted the plaintiffs to read, in support of their bill, two *ex parte* affidavits taken without notice. As generally used and understood, that constitutes the main distinction between a deposition and an affidavit. The one is evidence given under interrogatories, oral or written, taken down and certified by some officer duly qualified at a time and place of which the opposite party has notice; so that he may attend and cross-examine. And the giving of the evidence is compulsory on the witness. The affidavit is not compulsory on the witness, and therefore it might be useless to give notice. Its distinctive characteristic is that it is voluntary and *ex parte.* Notice, however, is often required and given. The affidavit may be filed by order of the court, as was done in this case; and then the court may, and often does, for cause shown, permit the other party to cross-examine, and the testimony of the witness then

becomes compulsory. See 1 Daniel, Ch'y Pr. (6th Am. Ed.) p. 888, note. That kind of a notice operates to some purpose, and was given here. So that it can not be said, in that sense, that these two *ex parte* affidavits were read without notice; and no doubt defendant could, for good cause shown, have obtained leave to cross-examine. Still, I should think notice of the time and place of taking the affidavit the better practice, and, if before an officer who can take them, it resolves it into a deposition; but, so far as I have observed, such has not been our practice. How far and with what effect *ex parte* affidavits may be read in support of the bill and of the answer *pro* and *con* on a motion to dissolve it is not easy to say. See 2 Daniel, Ch'y Pr. (6th Am. Ed.) 1668, and note; *Id.* 1671; 2 High, Inj. (3d Ed.) §§ 1481, 1603 *et seq.; Williamson* v. *Jones, supra,* p. 231 (19 S. E. Rep. 436, 447); *Noyes* v. *Vickers, supra,* p. 30 (19 S. E. Rep. 429).

I do not see that the affidavit of James M. Poling, late sheriff, tends to contradict any record. It is to the effect that, when his settlements were made with the building fund of Ripley district—on the 15th day of October, 1891, for the year 1890; on the 15th day of July, 1892, for the year 1891; and on the 15th day of July, 1893, for the year 1892—if all the orders outstanding against the fund and then unpaid had been in, the respective balances against him would have been small, it being used as evidence tending to show that, after the settlements made, there were other unpaid orders to reduce the fund. However, in the view taken, it is not necessary to lay any stress upon either affidavit. The other affidavit describes the desk charts and large illustrated charts, and accompanying box and easel. The second amended bill files one set of these charts, *etc.*, called in the contract of purchase "Public School Study Made Practical," as an exhibit with the bill, and alleges that all the other sets are like the one filed; and this amended bill had no other purpose, and the affidavit was intended to describe them as a matter of convenience, and also to show that they are not a part of the series of charts and text-books prescribed by section 58 of chapter 45 of the Code. Where the character of the chart and map is a

material question in controversy, and it speaks for itself on the point, I see no reason why it may not be made an exhibit, and in that way, as it then requires no proof unless called for by the answer, and also be described by those who have examined them for the purpose used, viz. on a motion to dissolve.

The main objection of counsel to these affidavits is that they were read on final hearing. In this I think they are mistaken and have misconceived the nature and effect of the order of the court; for it says that "defendant's motion to dissolve the injunction is overruled and disallowed, and this case is continued," and there has not yet been any other hearing than on defendant's motion, nor any final decree. It is evident from the language used, that the circuit judge was careful to avoid the possibility that the fact of his having overruled the motion to dissolve should be construed into anything savoring of making it perpetual. That question was left open. The injunction still stands [see 2 High. Inj. (3d Ed.) § 1576] until further order, awaiting the final hearing.

At length we reach the merits. (1) Were these charts such things as the board was authorized by law to buy? (2) And, whether authorized or not, were the manner and the time of payment lawful? Chapter 45 on "Education" comprising more than one hundred sections is our Code on the subject. See Code (Ed. 1891) p. 359, and chapter 26 p. 75, Acts 1893; and the same published, with notes of decisions (1894) by Virgil A. Lewis, Esq., State Superintendent of Free Schools.

Section 45 of chapter 45 reads as follows: "It shall not be lawful for the board of education of any district or independent school district to contract for or expend in any year more than the aggregate amount of its quota of the general school fund, and the amount collected from the district or independent school district levies of that year, together with any balance remaining in the hands of the sheriff or collector at the end of the preceding year and such arrearages of taxes as may be due such district or independent school district. Nor shall such board hereafter incur any debt to be paid out of the school money of any subsequent year."

This has been the law since the 8th day of March, 1881. See Acts 1881, p. 168, c. 15. It commands, with a directness and brevity that has but one meaning: "You shall not incur now any debt to be paid out of the school money of any subsequent year." The policy intended to be subserved by this command is the result of widespread observation and long-continued experience. These taxes are the lifeblood of the school system, and the current taxes of each fiscal year are needed for the current expenses of each year, the taxes of the subsequent year for the current expenses of the subsequent year, and by no sort of circumlocutory shift or device shall they be trenched upon and used to pay the debt of any previous year's contracting. This is a vital part of the fiscal affairs of the school-system, commanding and obligatory upon those who deal and contract with the board, as upon the board themselves; and not the one more than the other can plead ignorance of this law. Its hardship and inconvenience in special cases, such as building new houses in the independent districts to meet the wants of enlarged and growing schools, has been for several years a subject of common observation and remark. Yet this short, sweeping command of the general statute has thus far never been qualified, or in the slightest relaxed, and if it should ever be done it is likely to be done with caution, guardedly, and with an eye to the danger of abuse. But we have to take this law as we find it, for the law-making power has thus far set its face against permitting school moneys to be used and spent in anticipation of their levy and collection.

But it is said that this was not intended. It is only a method of paying by installments out of funds now in hand or in easy reach. That may be all right enough if the orders had in some way shown that they were to reach backward, and not forward, for the means of payment. But they do just the reverse. They could not have more explicitly indicated that they were payable out of the school money of subsequent years—No. 44, on the 1st day of December, 1892, out of the building fund of that year; No. 45, on December 1, 1893; No. 46, on December 1, 1894—all without interest, and after the levy of that year has become due and payable.

And this case illustrates another reason that no doubt had some influence in closing the door so tight against the temptation to waste and extravagance. All expenses incurred in the district in connection with the schools. and not chargeable to the "teacher's fund," are made a charge on the building fund. See § 38, c. 45. Can there be a doubt that these school-orders are on their face payable out of the school-money of subsequent years? They are all payable after the 15th day of October, in each year; and the defendant in this case claims and sets up, and the record for our purpose shows, that order No. 44, dated September 25, 1891, and due without interest on the 1st day of December, 1892, for four hundred and twenty dollars, was considered and levied for in laying the levy for the building fund for the school year 1892; and so it was intended to do, and will be done, as to the two other subsequent years, for that is their plain meaning and intent, as appears on their face. If the order had read payable out of and chargeable to the present building fund of Ripley District, and not out of the school money of any subsequent year and the contract of purchase had said the same thing in some way, then it could be said that the board did not at least intend to incur any debt payable out of the school money of any subsequent year. "The plain and commendable purpose of the provision is to make the available funds of each year pay the demands of that year, and to protect the tax payer from indebtedness beyond what each year's means will pay." *Davis* v. *Board,* 38 W. Va. 382 385 (18 S. E. Rep. 588); *Mayor, etc.* v. *Gill,* 31 Md. 375. And since this board of education of the independent school district of Ripley, in the county of Jackson, is created by statute (see section 7, c. 45) it must depend upon the statute both for its powers and for the mode of exercising them upon the true construction of the statute creating them. *Pennsylvania Lightning Rod Co.* v. *Board of Education* (1882) 20 W. Va. 360. It has no power derived from usage, and can exercise none not expressly conferred by statute, or which fairly arises by necessary implication. *Harris* v. *School District,* 28 N. H. 61. Their functions are wholly of a public nature. *Board*

*Ed.* v. *Board of Ed.*, 30 W. Va. 424 (4 S. E. Rep. 640) nd must to be valid, be exercised in the mode prescribed; they can exercise on the point here involved no discretion. Here the orders and the contract direct the time and mode of payment in such a way as to clearly indicate the school money of subsequent years as the source of payment, and as meaning that, it has been so interpreted and acted upon in providing for the payment of the first order No. 44, for four hundred and twenty dollars.

These orders as a mode of payment of a debt, which by law was not payable out of the school money of any subsequent year, were in plain violation of law; and I do not deem it material to consider, whether putting this and that together, that one or more of the treasurers may owe, there can be made up enough in hand and in easy reach to pay the debt incurred. When that is the case, let provision be made that it shall be paid out of that fund and out of no other; otherwise, it will be sure to fasten itself upon the fund prohibited, as it did in this case according to defendants' own showing.

Of the power to levy under certain special charters I need not speak. This general law (chapter 45) was intended to be of and within itself a Code, covering the whole subject; somewhat like chapter 50. And as it contemplates that these important and permanent schools may now have by gift or in any wise, and may hereafter come to have by purchase, libraries and philosophical and other apparatus, section 14 provides that the trustees shall visit the schools, and among other things see that these are kept in good order. I have no doubt that some schools have already acquired in that way the beginning of quite useful libraries. This law says: " Let them be taken care of, and kept in good order." But it is contended by plaintiffs' counsel that as long as the state refrains from buying for the school children their school books, and furnishing them without cost, you cannot go broadcast under this fourteenth section in buying for each of these schools one thousand two hundred dollar sets of maps and charts, with easels, *etc.*, to hold them, and books, *etc.*, to explain them; that it will be time enough for this when the law plainly author-

izes it; that the present law does not.   Section 38 requires
an annual levy for the building fund to provide school-
houses and grounds, furniture, fixtures and appliances, and
to keep the same in good order and repair; to supply said
schools with fuel and all other things necessary for their
comfort and convenience.    It is contended that none
of these embrace and signify such maps and charts as these
to any greater extent or in any other fair sense than they
can be held to embrace the ordinary school books and text
books and charts; that no one contends for such latitudi-
nous construction ; that the school-houses, furniture, fix-
tures and appliances required to be furnished and kept in
good order and repair for the comfort of the scholars of
the school do not embrace these charts and maps by any
fair intendment; that the word "appliance," taken with
its accompanying words means something adapted and
used for the comfort of the pupils, and not a chart or map,
as a means of teaching and instructing them after they
have been made comfortable.    There must be some limit
to what the term "appliance" fairly embraces in such con-
nection.    The Boards of Education acting on the opin-
ions of the several Attorney Generals of the state, have in
many instances furnished their school-houses out of the
building fund with various maps, charts and dictionaries for
reference by the teacher and pupils.    I doubt whether one
thousand two hundred and sixty dollars is a reasonable ex-
penditure for such things as these charts are described to
be.    But that is not the question.   Are they such things
as can be lawfully purchased, as the law now stands ?
This it is not necessary for us to decide ; and such decision,
as we could in the circumstances make, would be likely to
create uncertainty and confusion upon an important item
of public expenditure.    There are some lame places in the
school-law, I have no doubt; but the law ought not to be
stretched by construction to cover them, but the proper
authority should be left to apply the remedy, if needed.

Both plaintiffs and defendant Davis allege that, after the
purchase of these maps and charts had been made, the
Board of Education made, in the school year 1892, a levy
for the payment of the order No. 44, for four hundred and

twenty dollars, due and payable on the 1st day of December, 1892 ; that the plaintiffs have paid their taxes for that year, including such levy, *etc.* It is fair to presume that all or the most of it was collected by the sheriff before this injunction was awarded, and some of it may have been paid to defendant Davis before that time. How these facts are this record does not disclose, and therefore their bearing can not be discussed.

We see no error in the decree complained of. The motion of the defendant to dissolve the injunction was properly overruled, and the injunction permitted to stand until further order to be made at the final hearing.