# CHARLESTON.

HONAKER *et al v.* BOARD OF EDUCATION OF POCATALICO DIST.
*et al.*

Submitted January 13, 1896—Decided April 8, 1896.

1. BOARDS OF EDUCATION—PUBLIC CORPORATIONS—POWERS OF
    BOARDS OF EDUCATION.
    The board of education of a school district, composed of the
    president of the board of education and two commissioners, is a
    public corporation, created by statute (Code, s. 7, c. 45) with func-
    tions of a public nature expressly given, and having no other;
    and therefore it can exercise no power not expressly conferred
    or fairly arising by necessary implication, and it can exercise its
    functions in no other mode than in that prescribed or authorized
    by the statute.

2. BOARDS OF EDUCATION—MEMBERS OF BOARDS OF EDUCATION.
    The members of the board, acting individually and separately,
    and not as a board, convened for the transaction of business, can
    not accept a proposal or make any contract whatever that will
    bind them as a corporation.

3. BOARDS OF EDUCATION—POWER TO CONTRACT DEBTS—SUBSE-
    QUENT LEVIES.
    As a board it can not incur any debt to be paid out of the
    school money of any subsequent year.

4. BOARDS OF EDUCATION—DEALINGS WITH BOARDS OF EDUCA-
    TION.
    All who deal with the board of education are charged with
    notice of the scope of their authority, and that they can bind
    their district only to the extent and by such contracts as are ex-
    pressly authorized by law.

5. BOARDS OF EDUCATION—SCHOOL APPLIANCES.
    The board of education may, under the head of "appliances,"
    provide for the school houses maps and charts; but it must be
    made to appear that they are not mere school books in some
    other form or under some other name, but something of which a
    few will answer the needs of all, suitable to the school, and
    reasonably necessary to enable the teacher to impart instruction
    to the pupils more efficiently in such branches as are required to
    be taught.

6. BOARDS OF EDUCATION—GIFTS TO MEMBERS OF BOARDS OF EDUCATION—INTEREST OF SCHOOL COMMISSIONER IN CONTRACTS.

The giving of anything of value to a commissioner of the board of education of a school district, intended to influence him in the discharge of a legal duty, or his receiving anything of value in corrupt payment of an official act done or to be done, renders void any contract to the making of which he was thus induced in whole or in part, directly or indirectly, and to the validity of which his vote or assent was necessary.

7. BOARDS OF EDUCATION—GIFTS TO MEMBERS OF BOARDS OF EDUCATION—VOID CONTRACTS.

A school commissioner of a district is notified to attend an adjourned meeting of the board of education, set to pass upon a proposed contract for the purchase of certain charts for the public schools of their district at the price of seven hundred and fifty dollars. He refused to go until the agent selling the charts handed him two dollars and fifty cents in money to pay him for his time and reimburse him for loss sustained by closing his place of business. Then he attended the meeting of the board at the time and place fixed, and he and the president of the board voted for making the purchase and signed the contract; but the third commissioner voted against it, and refused to sign the contract. *Held*, such contract, thus procured and made, is against public policy, and void, for want of the sanction of a competent majority of the board to make it.

8. PRINCIPAL AND AGENT—CORRUPT CONTRACTS.

Where a principal sends forth his agent to conduct his affairs and contract for his benefit, and the agent procures a contract by fraudulent or corrupt practices, although the principal may not have been privy in any way to such conduct of his agent, yet the principal claiming the benefit of the contract must take it, tainted as it may be with such practices.

9. BOARDS OF EDUCATION—EQUITY JURISDICTION—SETTING ASIDE ILLEGAL CONTRACTS.

A court of equity has jurisdiction of a suit by and on behalf of the resident taxpayers of a school district to set aside a contract made by and with the board of education, when the same is illegal, as made in fraud of the rights of such taxpayers, and so far as the same creates a debt to be paid out of the school money of any subsequent year, or is made for the purchase of things which the school board had no authority to buy; there being no other adequate remedy.

J. H. NASH, J. B. MENAGER and BROWN, JACKSON & KNIGHT for appellant, cited 39 W. Va. 498; Const. Art. XII, ss. 1, 2; Id. Art. VII, s. 5; Id. Art. X, s. 7; Code, c. 45, ss. 9, 13, 14, 20, 21, 34, 38, 23, 66; Webster's Dict. "Appliance,"

"Apparatus"; Standard Dictionary Id.; 59 Ind. 534; 55 Ind. 136; 98 Ind. 498; 107 Ind. 44; 21 Kan. 536; 119 Ind. 216; 35 W. Va. 458, 615; 2 Am. & Eng. Enc. Law, 530; 90 Ky. 53; 25 Hun, 461-62; 136 Ill. 478; 20 W. Va. 366.

BOWYER & GREEN for appellees, cited 1 High. Inj. 467; 39 W. Va. 498; 38 W. Va. 382; 101 U. S. 601; 2 Dill. Mun. Corp. §§ 914-19; 20 W. Va. 360; 28 N. H. 61; 24 Mo. App. 250; Code, c. 45, ss. 34, 38, 39, 45, 57, 58, 14, 20, 7; 119 Ind. 213-15; 80 Iowa, 121-24; 30 Mo. App. 456; 2 Am. & Eng. Enc. Law, 532, 534; 23 Court of Claims, 329; 64 N. H. 243; 38 Kan. 696; 77 Cal. 638; 21 Kan. 537; 35 W. Va. 615.

HOLT, PRESIDENT:

On an appeal from a decree of the Circuit Court of Putnam county, pronounced on the 28th day of February, 1894, perpetually enjoining the Caxton Company from collecting and the school board from paying a debt for seven hundred and fifty dollars which the board contracted in the purchase of school charts. The bill of injunction is based on three distinct grounds:

1. That the members of the board of education, in making this purchase in the year 1893, incurred the debt of seven hundred and fifty dollars to be paid one half out of the school money of the subsequent year; and that this was done in violation of section 45 of chapter 45 of the Code. The plain and commendable purpose of this provision of the statute is to make the available funds of each year pay the demands of that year, and protect the taxpayer from indebtedness beyond what each year's means will pay. *Davis* v. *Board*, 38 W. Va. 382, 385 (18 S. E. 588). And a court of equity has jurisdiction of a suit by and on behalf of the resident taxpayers of a school district brought to set aside and hold for naught a contract made by the board of education, so far as the same creates and incurs a debt to be paid out of the school money of subsequent years, there being no other plain, adequate, and complete remedy. *Shinn* v. *Board*, 39 W. Va. 497 (20 S. E. 604). This could hardly have been the ground on which the circuit court based its decree, for the written contract for the purchase of the charts as amended and finally executed was entered into on the 15th day of

July, 1893. One half of the seven hundred and fifty dollars—the purchase money—was to be paid on the 1st of December, 1893, and the other half on the 1st of April, 1894, and provision was made for payment out of the school levy of the current fiscal year, that day laid by the board. But there is no question that the contract as first made did create a debt with one half of it to be paid out of the school money of the subsequent year.

Ground No. 2 is that the school law (chapter 45 of the Code) does not confer upon the board of education the power to buy such things; that they do not come within the meaning of the term "appliances," as used in the statute. The board of education of a school district is a corporation created by statute (section 7 of chapter 45) with functions of a public nature, expressly given, and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication; and in no other mode than that prescribed or authorized by the statute. *Shinn* v. *Board*, 39 W. Va. 498 (20 S. E. 604). It is a public corporation, created for public educational purposes (1 Thomp. Corp. § 25) laying throughout the United States annual levies of more than one hundred and sixty million dollars. All who deal with the board of education are charged with notice of the scope of their authority, and that they can bind their district only to the extent and by such contracts as are authorized by law. See *School Tp.* v. *Barnes*, 119 Ind. 213 (21 N. E. 747). And the members of the board, acting individually and separately, and not as a board convened for the transaction of business, can not make a contract that will bind them as a corporation. *Pennsylvania L. R. Co.* v. *Board of Education*, 20 W. Va. 360. The evidence shows that this contract of sale as first made was in plain violation of this important rule of law, but was afterwards called in, and the present one was put in its place. Whether the law confers upon the board the power to make such purchase depends upon the scope and meaning of section 34 of chapter 45, read in connection with other sections and clauses bearing on the same subject. It reads as follows: "The board of education of every district shall provide by purchase, condemnation, leasing, building or

otherwise, suitable school houses and grounds in their district, in such locations as will best accomodate the inhabitants thereof, and improve such grounds and provide such furniture, fixtures and appliances for said school houses as the comfort, health, cleanliness and convenience of the scholars may require, and keep such grounds, school houses, furniture, fixtures and appliances in good order and repair." Appliance is anything brought into use as a means to effect some end. An educational appliance is something necessary or useful to enable the teacher to teach the school children. No educational means of imparting instruction to school children is more essential than the proper school books; therefore, according to the argument in this case, it is the duty of the board to provide them. But no one, I believe, contends for the conclusion to which this reasoning leads us. There must be some additional qualifying restriction. The appliance must be something like a blackboard, map, or dictionary, in that one or two may be enough for the use of the whole school, and can be used by the teacher in giving instruction to the pupils. No person being required to furnish such common but necessary property for the benefit of the whole school, they can only be supplied by the board of education. See *School Tp.* v. *Barnes,* 119 Ind. 213, 217 (21 N. E. 747). But there are still other necessary restrictions. It must not be a school book in disguise. This is vitally important, for the opening for the sale of school books in the United States is so large, and the pressure brought to bear to make sales, whether the books be needed or not, so great, that it seems to be almost irresistible, and *quasi* school books are gradually creeping in under the name of appliances. They must not only be genuine appliances, but they must be shown to be suitable and reasonably necessary for the use of the public schools, for the board has no authority to buy any appliance which is not suitable and necessary; for example, an appliance or apparatus suitable to some branch of learning not required to be taught.

There is a distinct charge in the bill that the agent of the Caxton Company succeeded in palming off these charts on the board by false and fraudulent representations, and at a

price fraudulently excessive, viz. thirty seven dollars and fifty cents for each chart. The testimony of twenty witnesses was taken; and a dozen or more of high character and intelligence, who have had experience in such matters, and occasion and opportunity to observe and to know, testify with great unanimity that object teaching is of prime importance in teaching the young—the very young—and that without some such thing as these charts it could hardly be done. They also say that these charts are not mere school books in disguise, but aids essential to the teacher in teaching and to the pupil in learning; that one or two will answer for the whole school, and that they relate only to such branches as the law requires to be taught. As to the price, two say five dollars would be enough; one says they ought to cost about fifteen dollars; the others, who know them best, say that, as compared with other charts, the agreed price of thirty seven dollars and fifty cents is not exorbitant. There is a lame and unsuccessful attempt to make good by proof the charge of misrepresentation, nothing more, and it needs no comment.

The third and the last charge in the bill of injunction is that the Caxton Company, by and through its agents and salesmen, offered to the board of education and to the individual members thereof, money and other things of value, and used various other undue, illegal, and fraudulent inducements, with the view and for the express purpose of securing an order and contract for the purchase of the Caxton School Series illegally and for an exorbitant price, to the great detriment of the plaintiffs and all other taxpayers of the school district. Bribery is defined "as the voluntary giving or receiving of anything of value in corrupt payment for an official act done or to be done." 2 Bish. New Cr. Law, § 85. See *Dishon* v. *Smith*, 10 Iowa, 221; *State* v. *Ellis*, 33 N. J. Law, 103. The payment or offer of a valuable consideration to a public officer to influence him in the discharge of a legal duty constitutes the offense. See 2 Am. & Eng. Enc. Law, 532; And. Law Dict. p. 136. See, on the subject, section 4 *et seq.* of chapter 147 of the Code, and section 13 of chapter 45; *Com.* v. *Callaghan*, 2 Va. Cas. 460. A promise to pay for loss of time is bribery. *Simpson* v.

*Yeend,* L. R. 4 Q. B. 626; *Cooper* v. *Slade,* 6 H. L. Cas. 746; *People* v. *O'Neil,* 48 Hun, 36, 43. Every public officer being a guardian of the public welfare, no transaction growing out of his official services or position can be allowed to inure to his personal benefit; and from such transactions the law will not imply a contract. *Davis* v. *U. S.,* 23 Ct. Cl. 329. When a contract grows out of and is connected with an illegal act, it will not be enforced, *Jones* v. *Surprise,* 64 N. H. 243 (9 Atl. 384). Courts of justice will not enforce any contract which is injurious to public rights, contravenes public policy, or violates public law. A contract with the state, procured by bribery upon the officers having power to make it, is against public policy and void. *State* v. *Cross,* 38 Kan. 696 (17 Pac. 190). An order by two of the trustees of a school district, one of whom is personally interested in it, and therefore incompetent to act, is void for want of the sanction of a competent majority of the board, whether the interested trustee has acted fairly or not. *Shakespear* v. *Smith,* 77 Cal. 638 (20 Pac. 294). The evidence shows without any attempt at contradiction that one of the commissioners of the board of education, when notified of the time and place of meeting of the board for the purpose of passing on the proposed contract for the purchase of the Caxton Series, refused to go, on account of the loss he would sustain by closing his place of business. Thereupon the agent of the Caxton Company paid him two dollars and fifty cents in money to reimburse him for his loss, telling him at the time that he did not do this to try to bribe him, or with the intention of influencing his decision in any way. The board is composed of three Commissioners the commissioner who was thus induced to attend and the president of the board signed the contract; the third one refused to sign it. The state pays the commissioner one dollar and fifty cents per day. Code, s. 6, c. 45. It was his plain duty to attend the meeting and pass upon this important contract without being influenced in the discharge of such legal duty by requiring or receiving from the party who proposed the contract any pay for his time or his loss in closing his place of business. The people of the state take pride in their public schools, in their growing usefulness and efficiency, and

to that end give of their means without stint and without complaint, until now it has reached the sum of one million six hundred and sixty four thousand five hundred and twenty seven dollars a year; and they have a right to feel indignant when they have reason to suspect the pressure of corrupt practices or tampering in any way, with the school boards who control the school money of the districts.

This contract was void because made by only two of the board, one of whom had rendered himself incompetent to act by accepting pay from the party contracted with for attending the meeting at which the contract was made. Without his vote in favor of it, it would not have been made, hence so far from having the sanction of two of the board, the number required by the statute to constitute a quorum, it had under the law the sanction of but one, and therefore had only the semblance of a contract. Besides, it is a plain case of money demanded, given (and received) with intent to influence the commissioner in the discharge of the legal duty of attending the meeting and passing on the question of the acceptance of the proposed contract. I should be reluctant to believe that his signing the contract was also thus induced. The first is enough to require the contract to be held void, and that much is established by the concurrent testimony of both parties to the transaction.

But it is proper to add that there is nothing in this record tending in the slightest degree to bring home to the principal in this contract knowledge or sanction of this conduct on the part of their agent; but, notwithstanding their innocence, when they come into court, and insist upon its validity and enforcement, they are met with the maxim upon which the law of agency rests, "What one does through another, that he does himself," so far as the illegality of the contract itself is involved. The doctrine of *ultra vires*, in that attitude of the transaction, does not apply. See 1 Am. & Eng. Enc. Law (2d Ed.) 1180. Although the principal may have had nothing to do with this tampering of their agent with a member of the school board in order to influence him in the discharge of his official duty, may not have been privy to the transaction in any way, yet the company sent him out to sell and contract in their name and for their ben-

efit; therefore they were bound to see that it was so made as not to be a fraud on the rights of the taxpayers, and as they claim under it they must take it as tainted with these corrupt practices.

In our view of the facts of this case and of the law applicable thereto, the decree complained of is right, and must be affirmed.