# School District of the City of Erie *versus* Fuess.

1. Where the owner of a building employs a contractor to execute certain improvements and repairs thereon, and the latter is guilty of negligence while carrying on the work, the contractor alone is liable for damages resulting from such negligence, and not the employer.

2. A school district is a corporation having limited powers for carrying out the common school system within its limits, and cannot be held to the same measure of accountability for the wrongful acts and neglects of its officers, servants or agents, as a private corporation.

3. A school district employed a contractor to make certain repairs and improvements to the school-house, under the directions of a superintendent named by the district. It was expressly agreed that the contractor should not enter upon the work until the school was dismissed for the

season. The superintendent chosen by the district was the architect of the contemplated improvements, and was authorized only to direct the contractor as to the manner in which the work was to be executed. The contractor, by permission of the superintendent, began the work before the school was dismissed, and performed it so negligently that one of the school children was injured in consequence. It appeared that two of the members of the school board had visited the school-house after the work had been begun, but did not interfere or direct it to be stopped. In an action by the injured child against the school district to recover damages for the injuries done him,—*Held*, that as the contractor was, at the time of the accident, exercising an independent employment, the school district was not liable for his negligence. *Held*, further, that as the superintendent had no power to alter the time when the work was to be performed, his permission to the contractor to enter thereon, before the dismissal of the school, did not bind the school district or render it liable for the contractor's negligence. *Held*, further, that the mere fact that certain members of the school board had observed the fact that work had been begun, and did not interfere or stop the same, did not in any way render the school district liable for the contractor's negligence. *Held*, therefore, that the said school district, defendant, was entitled to judgment.

October 18th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Erie county :* Of October and November Term 1881, No. 85.

Case, by Frederick C. J. Fuess, by his next friend Joseph Fuess, against the School District of the City of Erie, to recover damages for personal injury caused by the alleged negligence of the defendant.

On the trial before GALBRAITH, P. J., the following facts appeared :

The plaintiff, a boy of about fifteen years of age, was a pupil in Public School No. 7, in the city of Erie. On May 13th 1875, the School Board, having determined to make some improvements to the building, entered into a contract with one John Hendry, a builder, the material provisions of which were as follows :

"1. Party of the first part accepts the tender made by party of the second part, for the extraordinary repairs ordered upon public school building No. 7, at the sum of $7,460.

"2. Second party agrees to furnish all the materials and perform all the work required for said public school building No. 7 in strict compliance with the plans and specifications prepared by Henry Shenk, under the superintendence of said Henry Shenk or such other person as said first party may designate, for said sum of $7,460.

"3. First party will deliver possession of said building to second party on the 3d day of July 1875, and said work must be fully completed, and the premises ready to be re-delivered to

first party, on or before the 1st day of September 1875. First party may be able to deliver possession of premises to second party at an earlier date than July 3d 1875, but is not bound to do so.

"4. Payments for said work will be made upon monthly estimates of the superintendent, and twenty per centum of all such estimates will be retained by first party until the final completion and acceptance of the work."

On the same day, the board entered into an agreement with Henry Shenk, whereby the said Shink agreed " to superintend the work proposed to be done under the contract this day signed between first party and John Hendry for extraordinary repairs to public school building No. 7," and " to devote all the time to said work necessary to a careful and complete superintendence of the same." Shenk was the architect, who had drawn the plans and specifications for said improvements. Both these contracts were formally approved by resolution of the Board of School Directors on May 15th 1875. Meetings of the school board were held on the 3d and 11th days of June following, but no further action was taken concerning the giving of possession to the contractor at an earlier date than that named in the contract, viz.: July 3d.

About the 21st of June 1875, before the school had adjourned for the summer vocation, Hendry, with his workmen, commenced excavating the earth from under the building and around the pillars which supported the floor, to the depth of from two and a half to three feet, leaving mounds of gravel under the pillars. This work was begun by the direction or permission of Shenk. Shenk testified, however, that on the afternoon of the 22d of June he ordered the work stopped, because the men had taken out as much earth as it was safe to take from around the piers; that he went to the building on the next day about 11 A. M., and discovered that the men were still at work. He testified : " I demanded to know why they were there at work ; I felt cross about it, and spoke crossly to them when I went in ; I found that they had done that which was agreed they should not do ; they had removed the pillars under two of the beams, and shored them up with timbers, and were waiting for school to adjourn to dig out and remove the others ; they said Hendry had been there that morning helping them to do it ; this was contrary to my instructions, not that I had any authority to stop them, but did it as a matter of precaution ; I found fault about it, and said this work was to be stopped yesterday, and you were to do no work here to-day ; they laughed at it, and said Hendry had been there, and they were not going to kill anybody ; I said a good deal to them about it ; they said they would wait till school was out, and then remove the

other pier or piers; I then went back to Mr. Wilkins's house, where Mr. Burton was waiting for me." . . . .

There was some evidence that two members of the school board visited the premises after the work had commenced and that they did not interfere or direct it to be stopped.

Between 11 and 12 o'clock on the same day (June 23d), one of the pillars in the basement, which had been undermined, sunk, thus taking away the support from an iron column supporting the floor of the second story, and causing the column to fall among the children in the school room on the first floor, whereby the plaintiff was seriously injured.

The defendant presented, inter alia, the following points:

3. The time for beginning the work of repairing school No. 7, having been fixed by the written contract with Hendry as July 3d 1875, no member or members of the school board had the power to change that contract so as to permit him to begin at an earlier date, and having begun at an earlier date, he became a trespasser, and the school district cannot be held liable for the damages arising from his unauthorized act, and therefore the plaintiff is not entitled to recover. *Answer.* No member of the school board had the power to change the terms of the written contract, but if the contractor, with the knowledge and assent of the superintendent appointed by the board, began the work before the time fixed in the agreement, and was permitted by him to carry on the work with the presence and knowledge of some of the members of the board, and the jury believe from the evidence that the plan and design of the work was in itself such as involved danger to the building, then the liability for injury resulting is not upon the contractor exclusively, but upon the school district. (Third assignment of error.)

4. The time for beginning the repairs was a part of the contract with Hendry, and no authority from the defendant having been proven to change the time, and Shenk, the superintendent, having no authority to make any such change, the evidence that Shenk told him to begin work is not sufficient to relieve Hendry, or to charge and hold defendant answerable in this case. *Answer.* This point is refused for the reasons already fully given and explained. (Fourth assignment of error.)

Verdict for the plaintiff for $1,291.66 and judgment thereon. The defendant took this writ of error, assigning for error, inter alia, the answers to the above points.

*S. A. Davenport*, for the plaintiff in error.—A school district is a quasi corporation of limited powers and can be held liable only to the extent fixed by the General School Law of 1854. Such liability extends only to the official acts of the directors, acting collectively as a school board. The negligence

[School District of the City of Erie *v.* Fuess.]

complained of, not being that of the board, the plaintiff has no right of action against the school district: Small *v.* Danville, 51 Me. 359; Gray *v.* City of Brooklyn, 50 Barb. 365; 1 Dillon on Munic. Corp. 94, 96; 2 Addison on Torts, 1198; Wharton *v.* School Directors, 6 Wright 363; Kingsley *v.* School Directors, 2 Barr 28; Wachob *v.* School District, 8 Phila. 568. Even if the school district were liable to the extent that a municipal or other corporation is liable, the plaintiff would have no cause of action. Hendry was a contractor, exercising an independent employment, and not a servant or agent of the school district; consequently he, and not the school district was liable for damages arising from his negligence, or that of his employés: Allen *v.* Willard, 7 P. F. Smith 374; Reed *v.* Allegheny, 29 P. F. Smith 302; Erie *v.* Caulkins, 4 Norris 253. The fact that Hendry was acting under the direction of Shenk, the superintendent employed by the board, and that individual members of the board saw Hendry's men at work and did not stop them, does not change the above rule: Fair *v.* Philadelphia, 7 Norris 311; Reed *v.* Allegheny, supra; 16 Amer. L. Register, 56; Bank of Pittsburg *v.* Whitehead, 10 Watts 402; Bank of Northern Liberties *v.* Davis, 6 W. & S. 289; Kingsley *v.* School Directors, 2 Barr 28.

*Brainerd* (*Benson* with him), for the defendant in error.— The contract with Hendry provided that the board *may* deliver possession before July 3d; and Shenk, the superintendent, who represented the board, did deliver possession and direct the commencement of the work on the 21st of June. This rendered the school district liable. A school district is not exempt from any liability for negligence, to which a municipal corporation would be liable. It is in law a municipality of special statutory creation, similar to counties and townships: Commonwealth *v.* Morrisey, 5 Norris 417; Wharton *v.* School Directors, 6 Wright 363.

Mr. Justice TRUNKEY delivered the opinion of the court November 14th 1881.

John Hendry contracted with the school district to furnish all the materials and perform all the work for the extraordinary repairs upon school building No. 7, in strict compliance with the plans and specifications prepared by Henry Shenk, under the superintendence of said Shenk, or such other person as the district might designate. He undertook to do the work with reference to plans and specifications already prepared, and agreed that he should not be entitled to pay for extra work or material, unless the same should be done or furnished on the written direction of the district indorsed on the contract. Possession was to

be delivered to him for commencement of the work, on July 3d 1875, at which time the house would be unoccupied. It was contemplated that possession would be given at an earlier date, if the building should be previously vacated, but the district neither delivered possession nor agreed that the work should be commenced before the time named in the contract.

By agreement of same date, the district employed Shenk to superintend the work to be done by Hendry, and devote all the time necessary to a careful and complete superintendence of the same. His business was to see that Hendry faithfully performed his agreement as the work progressed. He was not authorized to change or modify the contract in any particular. Nothing was committed to him other than to superintend the work which was to be done; he had made the plans and specifications which constituted a part of Hendry's contract; and the allegation that "Shenk was made the agent and superintendent of the school board, with full power to make the plans and specifications, and to begin and control the execution of the work for the board in all its details," is gratuitous.

The plan of the work was such as involved danger to the building. Hendry commenced before he was authorized, and the result proved the prudence of the school board in fixing the date for commencement after the vacation of the schools. The testimony shows that the injury to the plaintiff was caused by gross, if not culpable negligence. Shenk was superintending the work, and some of the members of the board knew the work was being done, before the accident.

In the instructions to the jury the court said : "If the contractor, with the knowledge and assent of the superintendent appointed by the board, began the work before the time fixed in the agreement, and was permitted by him to carry on the work with the presence and knowledge of some of the members of the board, and the jury believe from the evidence that the plan and design of the work was in itself such as involved danger to the building, then the liability for injury resulting is not upon the contractor exclusively, but upon the school district." That, we think, was error.

Where the purpose of the contractor is lawful and the owner of the property may lawfully commit its improvement to others, if the owner employs a contractor to do the work and the latter is guilty of negligence in doing it, the contractor and not the employer is liable. A person is not liable for the acts of another, unless the relation of master and servant or principal and agent exists between them. When an injury is done by a party exercising an independent employment, the party employing him is not responsible to the person injured. This principle applies to municipal corporations : Painter *v.* The City of Pitts-

burg, 10 Wr. 213. If the contractor is to perform according to the plans and under the direction of an architect he is nowise relieved from his positive covenants to do the work; he continues to have control over the men he employs and of the mode of performing his contract, and is liable for injuries caused by his neglect : Allen *v.* Willard, 7 P. F. Smith 374. In a contract with a city for the construction of a sewer, it was stipulated that the work should be commenced and carried on at such times and in such places and in such a manner as the engineer of the city should direct ; and that was not such a reservation of power as made the city liable for an injury occasioned by the negligence of the contractor : City of Erie *v.* Caulkins, 4 Nor. 247. A contractor for the grading and paving of a street in a city, the work to be done " under the directions and to the satisfaction of the city engineer and the committee on streets," is responsible for an injury he does to property abutting on the street, and the city is not liable : Reed *v.* Allegheny City, 29 P. F. Smith 300.

If the school district is to be treated as strictly a municipal corporation, the authorities settle that the employment of Shenk did not operate as a relief to the contractor, nor did it make the district liable as a master or principal for Hendry's trespass or carelessness. But school districts are corporations of lower grade and less power than a city, have less the characteristics of private corporations and more of a mere agent of the state. They are territorial divisions for the purposes of the common school laws, and their officers have no powers except by express statutory grant and necessary implication ; and these are for the establishment and maintenance of the public schools. The common school system partakes much of the nature of a public charity, extends over the whole state, is sustained by the public moneys, and the directors, who devote much time and labor for the public benefit, receive no compensation for their services. Unless exempted by the act of incorporation, or by law, a private corporation is liable for the wrongful acts and neglects of its officers done in the course and within the scope of their employment, the same as a natural person is for the acts and neglects of his servant or agent. A less stringent rule applies to public corporations, and least stringent of all should be applied to school districts, whose officers have limited and defined powers in a system exclusively for the free education of the children in the Commonwealth.

The directors as a board must exercise their powers—the board may make contracts, may authorize a committee to make a contract, and may appoint an agent for a proper and specific purpose. One or more of the directors, without authority from the board, can make no contract binding upon the district, can-

[Commonwealth *v.* McCarter.]

not change a contract, can do no act fixing the district for a liability. He may be personally responsible to those who suffer from his unauthorized acts, as any other citizen would be.

If some of the directors were present and knew that Hendry commenced the work before the time named in the agreement, whether they assented or objected, the district was not bound. They could not give him the right to begin at that time. If he began with the knowledge and assent of Shenk, the superintendent appointed by the board, he knew or ought to have known that Shenk had no power to assent for the district. Hendry's contract and Shenk's contract with the board contained no such authority. Shenk's sole employment was to superintend the work. In absence of a contract and without authority from the board, had those directors, who knew what Hendry was doing, made the excavation themselves, they would have been individually liable for an injury resulting to any person by reason of their negligence—the district would not have been bound to answer for the consequences of their trespass.

The school board stipulated that possession of the building would be delivered at a date after the vacation of the schools. Before the schools had been closed some of the directors discovered that persons were making a dangerous excavation, and it would have been humane in them to have endeavored to stop it. The board might have been convened, and, if necessary, the schools suspended until the progress of the work could have been enjoined by legal process. But the directors omitted such action, and it is claimed that the district is liable in damages for the injury done to the plaintiff by the act of a trespasser, or the unauthorized act of a contractor. Although the board of directors took no measures to prevent the excavation, we are of opinion that the persons who caused the injury are liable, and not the school district.

The third and fourth assignments of error are sustained.

　　　　　　　　　　　　　　　　Judgment reversed.