MICHAEL L. MADACHY *et al. v.* HUNTINGTON HORSE SHOW ASSOCIATION *et al.*

(CC 578)

Submitted May 11, 1937. Decided June 15, 1937.

*Thomas West,* for plaintiffs.

*Scott, Graham & Wiswell* and *Samuel Biern,* for defendants.

MAXWELL, JUDGE:

This certification embraces inquiry regarding the sufficiency of a bill in chancery and the answers thereto. The two questions presented by the pleadings are, first, whether a certain contract entered into between the Board of Education of the County of Cabell and another is beyond the power and authority of the board; and, second, whether the board's property embraced in the contract is being so used by the lessee as to constitute a nuisance. The suit is prosecuted by persons who own property and reside in the immediate vicinity of the land hereinafter mentioned.

The circuit court held the bill good in so far as it charges that the contract is illegal and void, but held the bill insufficient in respect of the nuisance charges. The answers were held insufficient wherein they undertook to meet the allegations of the bill respecting the *ultra vires* nature of the contract.

The contract in question was entered into April 15, 1936, between the Board of Education of the County of Cabell, of the one part, and the Huntington Horse Show Association, of the other part. By this contract, the board, owner of a parcel of unimproved land of about 2-8/10 acres in an out-lying section of the City of Huntington, leased the land to the Huntington Horse Show

.Association for a term of twenty years at the rental of $1.00 per year. The lessee acquired the property "for the purpose of conducting horse shows, fairs and livestock, horticultural, agricultural and similar exhibitions, and use by the Boy Scouts or similar organizations * * *." The lessee covenanted that when and at such times as the premises are not in use by it for any of the purposes recited "it will permit the use of the said premises for athletic practice, meetings or events and for recreation for school children, when and on such occasions as such use for such practice, meetings or events or such recreation the Lessor in writing requests and authorizes the same", under proper supervision by school authorities. Further, the lease provides: "If at any time after June 26, 1938, Lessor shall decide to use the demised premises for the erection and maintenance thereon of a school building or buildings, or shall sell said premises, then Lessor shall have, and is hereby given, the right to terminate this lease by giving notice of its election to so terminate this lease to Lessee; * * * and this lease shall terminate and all rights of the Lessee thereunder shall end at the expiration of one year after the date on which such notice shall be given." The lessee agrees to remove all improvements within ninety days after the expiration of the lease.

The greater portion of the property in question was acquired by the board's predecessor, the Board of Education of the Independent District of Huntington, in 1923, and the smaller portion was acquired by the present board in 1935.

From the answers of the board and of the association, it appears that the association is a creature of the Junior League of Huntington, incorporated, a branch of a nation-wide organization of young women, banded together for the purpose, among others, of engaging in community work of benevolent, charitable and civic nature, and of procuring funds for its chosen work by means of dues from its members, contributions by like-minded persons, and such public entertainment or exhibitions as may, by paid admissions, provide or enhance re-

ceipts available for the purposes of the organization. Its members and officers serve without compensation. The association was brought into existence by the league in order that horse shows might be given at Huntington to raise funds for the league to use in connection with a clinic which it had established in that city for the treatment of all children from six to sixteen years of age who, by reason of bodily infirmity or disease, need medical or surgical treatment.

The board takes the position that it has a lawful discretion to determine a proper use to which its said property may be put, pending a time when the property may be needed for the erection thereon of a school building or school buildings; that, by reason of the stated purpose for which funds derived from horse shows on the property are to be applied, the undertaking is for civic welfare and betterment and is such a matter to which the board may properly give countenance and support; that the board has arranged "that children in need of clinic services may be sent to the clinic, the Board of Education thus securing medical clinical assistance for children in the public schools without cost * * *."

A board of education may properly acquire for school purposes ground which does not have buildings thereon or which may have buildings not adapted to school use. Where such property has been acquired by a board and is not to be improved by it at once, and cannot be advantageously employed for school purposes in its present state, the board may exercise reasonable discretion as to the use to which the property shall be subjected, pending the time when it will be devoted to school purposes. But this does not mean that where valuable property has been acquired by a board of education for school purposes, through expenditure of a large amount of public funds, it may enter into a long-term contract, placing the property to a use entirely foreign to the purpose for which public funds were expended. When a board undertakes to enter into such contract, it acts without warrant of law. "The board of education of a school district is a corporation created by statute with function of a public

nature expressly given and no other. It can exercise no power not expressly conferred or fairly arising by necessary implication, and in no other mode than that prescribed or authorized by the statute." *Dooley* v. *Board of Education,* 80 W. Va. 648, 650, 93 S. E. 766. Other West Virginia cases emphasize this principle. *Herald* v. *Board of Education,* 65 W. Va. 765, 65 S. E. 102, 31 L. R. A. (N. S.) 588; *Honaker* v. *Board of Education,* 42 W. Va. 170, 24 S. E. 544, 32 L. R. A. 413, 57 Am. St. Rep. 847.

The lease embodied in the contract at bar is for a twenty-year period, but, by its terms, the lease may be terminated by the board of education within a shorter period on certain contingencies hereinafter more particularly noted. However, under provisions of the lease, the shortest possible time within which the board could repossess the property and enter again into full control of the same is three years, five and one-third months after the date of its execution. A board of education has no authority so to divest itself for such a long period of the control of public property which has been placed in its keeping. The substantial term of nearly three and one-half years transcends the idea of mere temporary usage of property pending its being subjected to its ultimate and permanent public use.

We look in vain to the statutes for authority such as the board has assumed in the recited contract. Under Section 8, Article 5, Chapter 8, Acts of the Extraordinary Session of the Legislature of 1933, the county board of education "shall purchase by condemnation, or otherwise, the lands necessary for school buildings, playgrounds, experiments in agriculture, and other educational purposes, and may make necessary expenditures for the improvement of the land." Also, the board shall provide by purchase or lease a sufficient number of suitable school buildings to meet the educational needs of the county. And, under Code 1931, 18-5-22, a board of education may provide proper medical and dental inspection for all pupils attending the public schools, and "shall also have authority to employ school nurses and to take any other action necessary to protect the pupils

from infectious diseases * * *." These several authorizations are not subject to enlargement at the election of a board of education. This is illustrated by the case of *Jarrett* v. *Goodall*, 113 W. Va. 478, 168 S. E. 763, wherein we held: "A district board of education has no authority to pay for medical services rendered a pupil that has been injured or has become ill while engaged in school activities, except for first aid attention rendered in emergency situations." That case was decided before the county unit law became effective, but the principle holds.

Under the lease in suit, the board of education not only divested itself of control and dominion over its property for a period of at least three years, five and one-third months, but its right to terminate the contract at all within the twenty-year term is based on the narrow contingency that the board "shall decide to use the demised premises for the erection and maintenance thereon of a school building or buildings, or shall sell said premises * * *." For no other reason can the board terminate the lease within the twenty-year period. Though it might become highly desirable that the said ground be used by the board as a recreation park and athletic field for school children, or for some other purpose not involving the erection of a building, the board could not, for such purpose, and for that reason, terminate the contract. The mere statement of this proposition is its sufficient condemnation.

Recurrence must now be had to the covenant in the lease that "when and at such times as the premises are not in use in the putting on of a horse show, fair, livestock, horticultural, agricultural and similar exhibitions, or for use by the Boy Scouts or simliar organizations", the lessee "will permit the use of the said premises for athletic practice, meetings or events and for recreation for school children * * *." It is to be noted that the purposes for which the lessee may use the property are manifold. The authorization is broad enough to warrant the use and occupancy of the property by the lessee through such portions of the year as it may desire. The extent of the time of the lessee's exclusive use is entirely

within its judgment. If there be any spare time the board of education may have the use of the property, for limited purposes, for school children. The assertion of the defendants that the property will be occupied by the association only about one week a year, for a horse show, and that throughout the remainder of the year the property will be available for the use of school children, at the election of the board, involves a possible arrangement dehors the contract. But the legal rights of the parties must be measured by the contract which they solemnly reduced to writing.

For the reasons above set forth, we are of opinion that in the execution of the contract in suit the board exceeded its authority for the following reasons: (1) the period within which the board may demand the return of full control and dominion over the property of which it is the lawful custodian, is of unreasonable duration, and is incompatible with the public weal; (2) the contingencies on which the board may demand the surrender of the property by the lessee are unjustifiably narrow and circumscribed; (3) the reservation of right of user of the property is inconsequential, being without assurance as to the extent of the time during which the school children, at the board's behest, may enjoy the property.

Cases from other jurisdictions concerning approved use of school properties are necessarily without forceful bearing here, because, of course, determination herein must be governed by our own statutes and the interpretations thereof by this court. It may be remarked, however, that there has not come to our attention any case from any jurisdiction upholding a divestiture by a school board of control of the property within its keeping, to such an extent as herein presented.

Therefore, we are of opinion the trial chancellor properly overruled the demurrer to that portion of the bill which draws into question the legality of the contract; also, that the chancellor was right in sustaining the plaintiffs' demurrers to those portions of the answers of the board and the association which attempt to justify

as a matter of law the execution of the contract by the board.

Whether the use of the property for a horse show constitutes a nuisance is a matter of secondary consequence which need not now be considered.

We affirm the rulings of the trial court.

*Affirmed.*