## Beaver Area School District v. Beaver Borough

*Reed, Ewing, Orr and Reed,* for plaintiff.

*John G. Marshall,* for defendant.

SOHN, J., January 11, 1957.—This is an action in equity in which Beaver Area School District, plaintiff, seeks an adjudication cancelling a lease of January 17, 1941, in which plaintiff is lessor, and Borough of Beaver, defendant, is lessee.

### Statement of Pleadings

Plaintiff is an area school district created by merger of four districts. As successor in title to the School District of the Borough of Beaver, plaintiff is the owner of a 13-acre tract of land. January 17, 1941, the School District of the Borough of Beaver leased the land to the Borough of Beaver for a term of 99 years, at an annual rental of $1. Since January 17, 1941, the Borough of Beaver has used the land for recreational purposes as part of a park in an area where the borough maintains other recreational facilities. Plain-

tiff alleges and defendant denies that the leased land is now needed by the school district for the construction of a high school building. Plaintiff has requested that defendant release any rights it may have in the land and has offered to acquire and lease to the borough an adjoining tract, larger in size, to replace the facilities presently provided by the borough. Plaintiff alleges that the borough indicated its willingness to execute such a release, but has failed to do so. Defendant avers that it did indicate its willingness to negotiate a release, but did not do so because its solicitor advised that it could not lawfully do so, and also, because a lease as offered, for a limited time and one which could be terminated at any time, was not acceptable to the borough. Plaintiff alleges that the Beaver Borough School District did not have legal authority to execute a lease for 99 years without a substantial consideration. Defendant avers that the school district did have such authority, and since the execution of the lease, defendant expended large sums of money in developing the land into a park area, and it has used the land for public park purposes. Plaintiff avers that the lease is not binding for a period of 99 years, but must be considered terminable whenever the land is required or needed by the school district. Defendant alleges that the lease was executed in good faith, and is binding. Plaintiff avers and defendant denies that the land is now required by the school district for the use, operation and development of the school system.

Plaintiff prays that the lease be cancelled by order of court. Defendant alleges that the lease constitutes a dedication of the land for park purposes and therefore defendant has no right or power to terminate it. Defendant alleges that the present school board has no power to terminate the lease made by a prior board, and that plaintiff has no standing in equity to request such an adjudication. Defendant further alleges that

the lease by the school board constituted a dedication of the land for park purposes, that the borough holds the land as trustee for the public, whose money has been expended in developing and maintaining a park, and neither the school nor the borough can do anything to destroy or change the purpose for which the land was dedicated . . .

### Discussion

In this action in equity, Beaver Area School District prays that a decree be entered cancelling a lease for a tract of land leased by the School District of the Borough of Beaver to the Borough of Beaver. The question before the court is whether or not the lease is valid.

In considering the question before the court, we discuss first the nature and general powers of a school district. In Mulligan v. School District, 241 Pa. 204, Mr. Justice (later Chief Justice) Moschzisker said:

". . . School districts are creatures of the statutes and only have such powers as are thereby given to them; they are 'corporations of lower grade and less power than a city, have less the characteristics of private corporations and more of a mere agent of the state; they are territorial divisions for the purposes of the school laws, and their officers have no power except by express statutory grant and necessary implication.' (Erie School District v. Fuess, 98 Pa. 600, 606). No act of assembly has been cited to us, and we know of none, which either expressly or impliedly grants or attempts to grant the right or confer the power upon a school district to convey in fee property acquired by it in the exercise of the power of eminent domain, or in such a case to enter into a covenant of general warranty of title; and in law the plaintiff's decedent must have been aware of this when he accepted the deed and paid the purchase money."

In Wilson v. Philadelphia School District, 328 Pa. 225, Mr. Chief Justice Kephart said:

"Our common school system was not adopted in this state as it exists today until many years after the Revolution, though the Constitutions of 1776, 1790 and 1838, and the laws recognized its vitally important part in our existence. After Thaddeus Stevens' and Governor Wolf's famous crusade for education, our schools became an integral part of our governmental system, as a *state* institution: Minsinger v. Rau, supra, at 331; Duff v. Perry Twp. School Dist., 281 Pa. 87; Ford v. School Dist., 121 Pa. 543; Board of Education v. Ransley, 209 Pa. 51. The Constitution of 1874 fortified it and directed the legislature to maintain 'a thorough and efficient system of public schools': Article X, Section 1. The school system, or the school districts, then, are but agencies of the state legislature to administer this constitutional duty. As such agencies, they do not possess the governmental attributes of municipalities. They are not municipal corporations: Wharton v. School Directors, 42 Pa. 358, not having legislative powers. They have been held to be bodies of a lower grade, with less power than cities, fewer of the characteristics of private corporations and more of mere agencies of the state: School District v. Fuess, 98 Pa. 600. They possess only the administrative powers that are expressly granted by the central government or inferred by necessary implication. The fact that they have the same territorial limits as municipal subdivisions does not change the character of their functions which are not municipal: see Ayars' Appeal, 122 Pa. 266, 283. See also Lehigh Coal & Nav. Co. v. Summit Hill School Dist., 289 Pa. 75, 81."

In Hatfield Township School District Auditors' Petition, 161 Pa. Superior Ct. 388, Judge (now Mr. Justice) Arnold said:

"The public school system of this commonwealth is entirely statutory. Within the constitutional limitations the legislature is supreme, and there reposes in the courts no power to permit deviation from its commands; and neither the local school districts nor the State Department of Education may by-pass the duties enjoined."

It is therefore obvious that the rights and powers of a school district, in the administration of a system of public schools, are administrative and are limited to such powers as are granted by the Constitution and legislature or such powers as are inferred by necessary implication.

With the nature of a school district and its general powers in mind, we turn to a consideration of the question as to what legislation has been enacted relative to dealing with real estate and particularly as to leases. Section 602 of the School Code of May 18, 1911, P. L. 309, in referring to land, in part, provides that the board of school directors may:

". . . sell, convey, transfer, dispose of, or abandon the same, or any part thereof, as the board of school directors may determine."

By the Act of May 11, 1939, P. L. 117, the legislature amended section 602 of the code by vesting in the board of school directors the necessary power to sell unused land by any of the following methods: (a) By public auction conducted by a licensed auctioneer after due notice by publication in a newspaper and posting hand bills; (b) upon sealed bids after notice in a newspaper and posting handbills; (c) at public sale, subject to approval by the court of common pleas, said authority to be secured upon petition describing the land, naming the prospective purchaser and setting forth the amount offered, affidavits of two persons familiar with real estate values to the effect that the offer is fair and reasonable and a better price than

could be obtained at public sale, shall be attached to the petition. The court shall direct notice of hearing to be given in a newspaper and by posting. In addition to the above, a return of sale shall be made to the court. The foregoing provisions were the statutory enactments in effect relative to selling and conveying property of a school district in 1941 when the lease in question was executed. No statutory provision had been enacted at that time relative to leasing land.

Because it indicates the trend and development of the legislative intention as to a school district dealing with land, we refer to the statute presently in effect although it has no direct bearing on the issue in this case. The provisions of the Act of May 11, 1939, were substantially reënacted in the Public School Code of March 10, 1949, P. L. 30. The legislature still made no provision as to leases. By the Act of August 26, 1953, P. L. 1451, the legislature granted, for the first time, specific power to execute leases for unused and unnecessary lands and buildings. The provision is as follows:

"The board of school directors of any district may lease for any lawful purpose, other than educational use, unused and unnecessary lands and buildings of the district pending the sale thereof or until such time as the board shall decide again to make use thereof for school purposes. Terms and conditions of lease shall be fixed by the board in the motion or resolution authorizing the lease. All rents collected shall be paid into the general fund of the district."

Even in this statute, the power is not general but special in that the lease is limited pending sale, or until such time as the board shall decide again to make use thereof for school purposes.

From the foregoing it is apparent that legislative authority to execute a lease did not exist when the lease in question was executed. Even today there is

no legislative authority in a school board to execute and deliver a 99-year lease such as the lease in this case.

We next consider whether or not there is authority to execute a lease vested in a school board by necessary implication as determined by judicial decision. In Petition of McKees Rocks School District, 96 Pitts. L. J. 329, Judge Ellenbogen said:

"A more basic objection to the execution of the lease is the fact that the School Code does not appear to confer authority upon school districts to lease real estate. Such a lease is of doubtful validity, unless there are special circumstances present."

In 78 C. J. S. §253, page 1224, the following statement appears:

"Thus, a lease is in excess of the authority of the board where the period within which the board may demand the return of full control and dominion over the property of which it is the lawful custodian is of unreasonable duration, and is incompatible with the public weal, where the contingencies on which the board may demand the surrender of the property by the lessee are unjustifiably narrow and circumscribed, and where a reservation by the board of a right of user of the property is inconsequential, being without assurance as to the extent of the time during which the school children, at the board's behest, may enjoy the property."

Where a lease is for an unreasonable period, it will not be upheld: 47 Am. Jur. §68, page 346. Municipal corporations have, in several cases, been held without power to lease school property: 63 A. L. R. 621. Statutes in some cases have expressly provided for the temporary renting of schoolhouse facilities: 133 A. L. R. 1250.

The specific question before us has been before the courts in other jurisdictions. In Trustees of Special

Tax School District No. 1, Leon County v. Lewis, 63 Fla. 691, 57 So. 614, the Surpeme Court of Florida held:

"The title to the land and the building is vested in the board of public instruction of the county, and the statutory authority of the trustees of the special tax school district with reference to schools in the district is not of control, but of supervision only, and does not include a right in the trustees to make the lease of the school property of the county involved in this controversy. No authority in the trustees to make the lease is made to appear."

In Herald v. Board of Education, 65 W. Va. 765, 65 S. E. 102, the Supreme Court of Appeals of West Virginia passed on the validity of a lease, authorized by a school board for the production of oil and gas. While some parts of the opinion are not applicable to the facts in this case, we quote at length from the opinion because of the excellent discussion of the general principles involved. The court said in part, page 769:

"Is that lease valid? That depends upon the power of the board of education to make it. A board of education is a public corporation having its birth and existence by statute. Code, chapter 45, section 7. The board of education is not a corporation vested with general powers of a business corporation. The books call it rather a *quasi* corporation: [Frans v. Young, 30 Neb. 360, 46 N. W. 528], 27 Am. St. R. 412. It is a public corporation, in that it is a part of the governmental structure and performs an important function in the body politic in the administration of government, a government agency. 'School districts are organized under the general laws of the State, and fall within the class of corporations known as *quasi* corporations. Civil corporations are of different grades or classes, but in essence and nature they must

all be regarded as public. The *school-district or the road district* is usually invested by general enactment operating throughout the State with a corporate character, the better to perform within and for the locality its special function, which is indicated by its name. It is but an instrumentality of the State, and the State incorporates it that it may the more effectually discharge its appointed duty. So with *counties*. They are involuntary political or civil divisions of the State created by general laws to aid in the administration of government. . . . Considered with respect to the limited number of their corporate powers, the bodies above named rank low down in the scale or grade of corporate existence; and hence have been frequently termed *quasi* corporations. This designation distinguishes them on the one hand from private corporations aggregate, and on the other from municipal corporations proper, such as cities or towns acting under charters, or incorporating statutes, and which are invested with more powers and endowed with special functions relating to the particular or local interests of the municipality, and to this end are granted a larger measure of corporate life': 1 Dillon Munic. Corp., secs. 24, 25. Their functions are assigned by our statutes. They have no other than those so assigned, and those necessarily implied—I say necessarily implied because essential to carry out the functions assigned—mere creatures of the statute for the performance of functions specified by the statute. We ventured to say in Shinn v. Board of Education, 39 W. Va. 498, that 'The board of education of a school-district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by the statute.' In Honaker v. Board of Education, 42 W. Va.

170, we repeat that doctrine, saying that such a board had only the power necessary to carry out its public functions, and that it could exercise no power not expressly conferred or fairly arising by necessary implication. In Pa. L. R. Co. v. Board of Education, 20 W. Va. 360, this Court held that: 'Corporations created by statute must depend, both for their powers and the mode of exercising them, upon the true construction of the statute creating them.' That case says that we must look at the purpose of the statute under which a board of education is to act. We must see what purposes its formation were intended to accomplish. Such is our law, under our own decisions. Are they consonant with the general law? 'School districts are usually vested with the power of making contracts in relation to school matters.' 25 Am. & Eng. Ency. L. 44. That says 'in relation to school matters.' It does not mean that such a board is a business corporation. That it can mine, manufacture, produce, barter and trade, things utterly foreign to the object of its formation. It cannot lease land held by it though it has the fee simple legal title, but solely and only for the purpose of a school-house. It cannot lease it for money making, because the statute provides for the accomplishment of its object by taxation, not by negotiation in the business world. 'Contracts made by the directors and trustees are binding upon the district when made within their authority.' 25 Am. & Eng. Ency. L. 58. We find in 2 Smith on Munic. Corp., sec. 1434, that school trustees 'can only act within the power prescribed by statute, and the liberty of action of executive officers of private corporations is not accorded to such trustees.' Speaking of boards of education we find in 3 Abbott on Munic. Corp., sec. 1080, this language: 'In common with the grant of powers to all subordinate and public *quasi* corporations, the rule of law applies of strict construction and a consequent

limitation of the rights which may be exercised by them and the duties which they can legally perform.' Very narrow powers are assigned them in note 3, 1 Dillon on Munic. Corp., sec. 24. 'At the present time the purpose of the organization of agencies of government seems to be incorrectly understood; the tendency being toward the idea that a public corporation should not only perform its functions as an agency of government but should also supplant private enterprises, thrift, and responsibility. The organic, legal and proper purpose should control the right of a public corporation to acquire property and this is especially true when considering the power of the corporation in its capacity as such to secure, hold and dispose of property. Clearly the power of a public corporation to thus acquire property is limited to the existence of the right or power based upon the purposes for which it is to be used, and although the state in its sovereign capacity is sometimes less controlled by this consideration, yet, the principle should never be forgotten when the question of the power of one of the subordinate agencies of government to acquire property is at issue. Such an agency should not be permitted to secure property for any purpose other than a public one and then only when the power has been expressly given or is necessarily implied as essential to the life of the corporation or the carrying on of the particular governmental object for which it was organized. The general authority, whether expressly or impliedly existing to acquire and hold property, should be limited to the purposes of the organization of the particular corporation and never construed as including those enterprises involving speculation or profit. These principles can be applied to the various existing subordinate corporations. They are organized for the performance of specific governmental duties. Counties, school districts, road districts, library or educational boards,

park commissions, municipal corporations proper and others, are each created with the idea that they shall carry out effectually some act included within the governmental power. Each one of these corporations may acquire, under grant of express power or the existence of the implied one above suggested, property which is to be used only for the purpose germane to the object for which the particular governmental subdivision was organized. The restricted and limited power of public corporations as governmental agencies cannot be too strictly maintained and strongly urged.' 2 Abbott on Munic. Corp., sec. 718. 'An unauthorized or illegal contract executed by a public corporation, is incapable of enforcement. It is absolutely void, and neither the doctrine of estoppel nor ratification can be invoked to maintain it. The strict rule of law applying to *ultra vires* contracts of corporations, as followed by the English Courts and the Federal decisions in this country is strictly applied to the acts of public corporations.' 1 Abbott on Munic. Corp., sec. 258.

"Under these authorities whence comes the power of this board to lease perhaps for many years this lot? Counsel for the board tell us that many powers are given a board of education by the statute. That very fact affords an argument to show that such a corporation is limited to the specified powers. But counsel say that among those powers under the statute is one which would justify this lease in the language, 'Said board shall receive, hold and dispose of according to the rules of law and intent of the instrument conferring title, any gift, grant, devise or bequest made for the use of any free school.' That clause uses the words 'according to . . . the rules of law and the intent of the instrument conferring title.' What rules of law? The law of the being, of the nature, of the object of the board's existence, and perhaps the law of section thirty-three, below mentioned, giving power to sell for money and

it to go into the building fund for other schoolhouses to be built. Some cases as to right of disposition in private owners under certain instruments do not apply when considering the power of a limited public corporation. So, some cases as to leases by municipal corporations. Their powers are wider than those of a board of education. Now, the deed conferring title in this case says that the lot is conveyed for the use of free schools. That would seem to say that the lot must be retained for that purpose. So far as it goes that language tends in that direction; but I do not place great stress on that language in the deed; for I am ready to say that the board could dispose of that lot, if it would prove unsuitable and put its proceeds into another lot. That would be in subservience to the trust upon which the lot is held. I do not deny the power of the board to even dispose of the lot, so it be in furtherance of education and appropriate to the execution of the duties of the board in the work of education. That is the object of that grant of power. It does not mean that it can divert the lot from school purposes to purposes foreign to that object, no more than it could divert the taxes paid by the people to utterly different and foreign purposes. In connection with the words relied on by counsel for such power in the board we must not forget section thirty-three, chapter 45 of the Code. It provides that the president of the board shall examine the schoolhouses and sites and report their condition to the board. Such as are in their judgment properly located and sufficient, or can be rendered so, shall be retained and the remainder, with the consent of the county superintendent, be sold by the board, but the statute provides carefully that the proceeds shall be added to the building fund. There is a limitation upon the power of disposition. The sale must be for money, and the money go into the building fund. . . .

"We are told that the board has the legal title in fee simple. So it has, but it is not a private owner, because it holds such title in trust for these plaintiffs and their children, and for those that may come after them. I can scarcely imagine a use to which this lot could be put more foreign to the purpose for which the law has invested the board with title. Such are the limitations of power of this board by law, and the lessees were bound to know thereof. 'Persons dealing with a corporation must take notice of what is contained in the law of its organization, and must be presumed to be informed of the restrictions annexed to the grant of power by the law by which the corporation is authorized to act.' Smith v. Cornelius, 41 W. Va. 59; Clarksburg Electric Co. v. City, 47 Id. 739. 'All persons dealing with school officers are presumed to do so with full knowledge of the limitations of the power of these officers to bind their corporations under the particular contracts.' 25 Am. & Eng. Ency. L. 59."

In Madachy v. Huntington Horse Show Association, 119 W. Va. 54, 192 S. E. 128, the Supreme Court of Appeals of West Virginia discussed a similar question as follows, page 55:

"The contract in question was entered into April 15, 1936, between the Board of Education of the County of Cabell, of the one part, and the Huntington Horse Show Association, of the other part. By this contract, the board, owner of a parcel of unimproved land of about 2-8/10 acres in an outlying section of the City of Huntington, leased the land to the Huntington Horse Show Association for a term of twenty years at the rental of $1.00 per year. The lessee acquired the property 'for the purpose of conducting horse shows, fairs and livestock, horticultural, agricultural and similar exhibitions, and use by the Boy Scouts or similar organizations.' The lessee convenanted that

when and at such times as the premises are not in use by it for any of the purposes recited 'it will permit the use of the said premises for athletic practice, meetings or events and for recreation for school children, when and on such occasions as such use for such practice, meetings or events or such recreation the Lessor in writing requests and authorizes the same', under proper supervision by school authorities. Further, the lease provides: 'If at any time after June 26, 1938, Lessor shall decide to use the demised premises for the erection and maintenance thereon of a school building or buildings, or shall sell said premises, then Lessor shall have, and is hereby given, the right to terminate this lease by giving notice of its election to so terminate this lease to Lessee; . . and this Lease shall terminate and all rights of the Lessee thereunder shall end at the expiration of one year after the date on which such notice shall be given.' The lessee agreed to remove all improvements within ninety days after the expiration of the lease.

"The greater portion of the property in question was acquired by the board's predecessor, the Board of Education of the Independent District of Huntington, in 1923, and the smaller portion was acquired by the present board in 1935.

"From the answers of the board and of the association, it appears that the association is a creature of the Junior League of Huntington, incorporated, a branch of a nation-wide organization of young women, banded together for the purpose, among others, of engaging in community work of benevolent, charitable and civic nature, and of procuring funds for its chosen work by means of dues from its members, contributions by like-minded persons, and such public entertainment or exhibitions as may, by paid admissions, provide or enhance receipts available for the purposes of the organization. Its members and officers serve

without compensation. The association was brought into existence by the league in order that horse shows might be given at Huntington to raise funds for the league to use in connection with a clinic which it had established in that city for the treatment of all children from six to sixteen years of age who, by reason of bodily infirmity or disease, need medical or surgical treatment.

"The board takes the position that it has a lawful discretion to determine a proper use to which its said property may be put, pending a time when the property may be needed for the erection thereon of a school building or school buildings; that, by reason of the stated purpose for which funds derived from horse shows on the property are to be applied, the undertaking is for civic welfare and betterment and is such a matter to which the board may properly give countenance and support; that the board has arranged 'that children in need of clinic services may be sent to the clinic, the Board of Education thus securing medical clinical assistance for children in the public schools without cost. . . .'

"A board of education may properly acquire for school purposes ground which does not have buildings thereon or which may have buildings not adapted to school use. Where such property has been acquired by a board and is not to be improved by it at once, and cannot be advantageously employed for school purposes in its present state, the board may exercise reasonable discretion as to the use to which the property shall be subjected, pending the time when it will be devoted to school purposes. But this does not mean that where valuable property has been acquired by a board of education for school purposes, through expenditure of a large amount of public funds, it may enter into a long-term contract, placing the property to a use entirely foreign to the purpose for which public funds

were expended. When a board undertakes to enter into such contract, it acts without warrant of law. 'The board of education of a school district is a corporation created by statute with function of a public nature expressly given and no other. It can exercise no power not expressly conferred or fairly arising by necessary implication, and in no other mode than that prescribed or authorized by the statute': Dooley v. Board of Education, 80 W. Va. 648, 650, 93 S. E. 766. Other West Virginia cases emphasize this principal: Herald v. Board of Education, 65 W. Va. 765, 65 S. E. 102, 31 L. R. A. (N. S.) 588; Honaker v. Board of Education, 42 W. Va. 170, 24 S. E. 544, 32 L. R. A. 413, 57 Am. St. Rep. 847.

"The lease embodied in the contract at bar is for a twenty-year period, but, by its terms, the lease may be terminated by the board of education within a shorter period on certain contingencies hereinafter more particularly noted. However, under provisions of the lease, the shortest possible time within which the board could repossess the property and enter again into full control of the same is three years, five and one-third months after the date of its execution. A board of education has no authority so to divest itself for such a long period of the control of public property which has been placed in its keeping. The substantial term of nearly three and one-half years transcends the idea of mere temporary usage of property pending its being subjected to its ultimate and permanent public use.

"We look in vain to the statutes for authority such as the board has assumed in the recited contract. Under Section 8, Article 5, Chapter 8, Acts of the First Extraordinary Session of the Legislature of 1933, the county board of education 'shall purchase by condemnation, or otherwise, the lands necessary for school buildings, playgrounds, experiments in agriculture,

and other educational purposes, and. may make necessary expenditures for the improvement of the land.' Also, the board· shall provide by purchase or· lease a sufficient number of suitable school buildings to meet the educational needs of the county. And, under Code 1931, 18-5-22, a board of education may. provide proper medical and dental inspection for all pupils· attending the public schools, and 'shall also have authority to employ school nurses and to take any other action necessary to protect the pupils from infectious diseases. . . .' These several authorizations are not subject to enlargement at the election of a board of education. This is illustrated by the case of Jarrett v. Goodall, 113 W. Va. 478, 168 S. E. 763, wherein we held: 'A district board of education has no authority to pay for medical services rendered a pupil that has been injured or has become ill while engaged in school activities, except for ˙first aid attention rendered in emergency situations.' That case was decided before the county unit law became effective, but the principle holds.

"Under the lease in suit, the board of education not only divested itself of control and .dominion over its property .for a period of at least three years,. five and one-third months, but its right to terminate the contract at all within the twenty-year term. is based. on the narrow contingency that the board 'shall decide to use the demised premises for the erection and maintenance thereon of a· school building or buildings, or shall sell said premises. . . .' For no other reason can the board terminate the lease within the twenty-year period. Though it might become highly desirable that the said ground be used by the board· as a recreation park and athletic field for school children, or for some other purpose not involving the erection of a building, the board could not, for such purpose, and for that

reason, terminate the contract. The mere statement of this proposition is its sufficient condemnation.

"Recurrence must now be had to the covenant in the lease that 'when and at such times as the premises are not in use in the putting on of a horse show, fair, livestock, horticultural, agricultural and similar exhibitions, or for use by the Boy Scouts or similar organizations', the lessee 'will permit the use of the said premises for athletic practice, meetings or events and for recreation for school children. . . .' It is to be noted that the purposes for which the lessee may use the property are manifold. The authorization is broad enough to warrant the use and occupancy of the property by the lessee through such portions of the year as it may desire. The extent of the time of the lessee's exclusive use is entirely within its judgment. If there be any spare time the board of education may have the use of the property, for limited purposes, for school children. The assertion of the defendants that the property will be occupied by the association only about one week a year, for a horse show, and that throughout the remainder of the year the property will be available for the use of school children, at the election of the board, involves a possible arrangement dehors the contract. But the legal rights of the parties must be measured by the contract which they solemnly reduced to writing.

"For the reasons above set forth, we are of opinion that in the execution of the contract in suit the board exceeded its authority for the following reasons: (1) the period within which the board may demand the return of full control and dominion over the property of which it is the lawful custodian, is of unreasonable duration, and is incompatible with the public weal; (2) the contingencies on which the board may demand the surrender of the property by the lessee are unjus-

tifiably narrow and circumscribed; (3) the reservation of right of user of the property is inconsequential, being without assurance as to the extent of the time during which the school children, at the board's behest, may enjoy the property.

"Cases from other jurisdictions concerning approved use of school properties are necessarily without forceful bearing here, because, of course, determination herein must be governed by our own statutes and the interpretations thereof by this court. It may be remarked, however, that there has not come to our attention any case from any jurisdiction upholding a divestiture by a school board of control of the property within its keeping, to such an extent as herein presented.

"Therefore, we are of opinion the trial chancellor properly overruled the demurrer to that portion of the bill which draws into question the legality of the contract; also, that the chancellor was right in sustaining the plaintiffs' demurrers to those portions of the answers of the board and the association which attempt to justify as a matter of law the execution of the contract by the board."

In Prescott Community Hospital Commission v. Prescott School District No. 1 of Yavapai County, 57 Ariz. 492, 115 P. 2d 160, the Supreme Court of Arizona held that a five year lease with right of renewal by a school district to a hospital commission, was ultra vires and void. The court said in part:

"School districts are created by the state for the sole purpose of promoting the education of the youth of the state. All their powers are given them and all the property which they own is held by them in trust for the same purpose, and any contract of any nature which they may enter into, which shows on its face that it is not meant for the educational advancement

of the youth of the district but for some other purpose, no matter how worthy in its nature, is ultra vires and void. . . .

"It is doubtless true that the maintenance of a hospital in the city of Prescott is a most praiseworthy objective, and that contributions for that purpose by those individuals or organizations which are legally permitted to make them are most commendable, but school districts are not permitted to give away the property of a district even for the most worthy purpose, and since it appears clearly by the terms of the lease that this is its practical effect, we hold that it is ultra vires and void."

The decisions from other jurisdictions are illustrative of the general principles involved. Except where authorized by statute, school boards are held to be without authority to execute leases of school district land, especially for a long term. In the absence of statutory authority in Pennsylvania permitting school districts to lease land, the cases are pertinent to the issue in this case.

Counsel for the borough contends that the power to sell, conferred by statute, is broad enough to include authority to lease. We do not agree with this contention. Even if it were so decided, the procedural requirements for a valid conveyance were not complied with, and the attempted act would be a nullity.

When the lease was executed and delivered by the school board to the borough, no stautory authority vested in the school board the power to make such a lease. Nor can it be inferred by necessary implication. It is therefore invalid. We further conclude that the execution of a 99-year lease for a consideration of $1 a year is inequitable and, under the facts in this case, invalid.

Counsel for defendant contends that the land has

been dedicated to a public use which cannot be revoked after the borough has accepted the park and expended public money in development and maintenance. That issue is not involved in this proceeding because we have concluded that the act of dedication was without requisite authority. It is, therefore, null and void from its inception. The same may be said as to the contention that the present board is bound by the contract of a prior board. Such is the rule of law with one important qualification that the contract must have been validly made: Detweiler v. Hatfield Borough School District, 376 Pa. 555; Horvat v. Jenkins Township School District, 337 Pa. 193; Altman v. Uniontown School District, 334 Pa. 336. In this case we have concluded that the contract was not validly made, consequently the present board is not bound thereby.

The application of pertinent legal principles impels the conclusion that the lease was null and void, in its inception, because the school board did not have the legal right to execute the lease. We further conclude that a lease of school district property for a term of 99 years at an annual rental of $1 a year constitutes an abuse of discretion. It would be invalid because of the length of term, even if the requisite authority to execute a lease had been vested in the board of school directors. Entertaining these views, we conclude that plaintiff should be afforded the relief prayed for in the complaint.

### Conclusions of Law

1. The lease dated January 17, 1941, wherein the School District of the Borough of Beaver leased to the Borough of Beaver a tract containing 13 acres of land as described in the complaint and situate in the Borough of Beaver, is null and void.

2. The aforesaid lease is hereby cancelled, and any interest therein, by the terms thereof, the Borough of Beaver may claim, are hereby annulled.

*Decree Nisi*

And now, to wit, January 11, 1957, it is ordered, adjudged and decreed that the lease dated January 17, 1941, wherein the School District of the Borough of Beaver leased to the Borough of Beaver a tract containing 13 acres of land as described in the complaint and situate in the Borough of Beaver is hereby declared to be without authority in law or equity, and it is declared to be null and void, and any interest therein claimed by the Borough of Beaver is hereby annulled and terminated. Costs to be paid equally by the parties hereto. Unless exceptions are filed hereto within 20 days from this date, this decree nisi shall be entered as the final decree.